[No. A025801. First Dist., Div. One. July 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL WILLIAMS, Defendant and Appellant.

**COUNSEL**

Stephen Selwyn Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Linda Ludlow and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, Acting P. J.**—Defendant Darrell Williams was found guilty by a jury's verdicts of receiving stolen property (Pen. Code, § 496) and, having previously been convicted of a felony, with possession of a concealable firearm (Pen. Code, § 12021). He had admitted three prior felony convictions. The appeal is from the judgment entered upon the jury's verdicts.

No contention is made of a lack of substantial evidence of Williams' guilt of receiving stolen property. Nor could he reasonably do so for, among other things, he was admittedly in possession of a handgun and bullets stolen in a recent burglary.

For reasons as will presently appear we affirm the judgment.

Upon a so-called *Beagle* (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) motion, Williams had sought to suppress evidence of his prior felony convictions for purposes of impeachment should he become a witness on his own behalf. The superior court denied the motion, stating: "Nothing within [the state's Constitution, article I] section 28, subdivision (d), could affect section 352. Thus, subdivision (f), dealing with the use of priors, is not included within this limitation. Consequently, section 352 cannot limit the constitutional mandate of subdivision (f) that priors may be used for impeachment without limitation. . . . *There is no law, at least to date, that would indicate to the court that it can exercise its*

*discretion with regard to Evidence Code section 352* as it relates to use of priors." (Italics added.)

Williams thereafter testified at the trial, and was impeached by proof of his prior felony convictions for burglary, automobile theft, and battery by a jail inmate upon a noninmate.

The issue of the appeal is whether the trial court erred in holding that it had no discretion, under Evidence Code section 352, to suppress evidence of such prior felony convictions for purposes of impeachment.

As noted, the appeal concerns the application of the recently adopted (June 8, 1982) article I, section 28 of the state's Constitution, commonly known as "Proposition 8." Hereafter we shall refer to the constitutional amendment as "Section 28."

Subdivision (f) of Section 28, as here relevant, provides: *"Use of Prior Convictions.* Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used *without limitation* for purposes of impeachment or enhancement of sentence in any criminal proceeding." (The latter italics only, is ours.)

And Section 28's subdivision (d), entitled *"Right to Truth-in-Evidence,"* recites in part: ". . . Nothing in this *section* [our italics] shall affect any existing statutory rule of evidence relating to . . . Evidence Code, Section[] 352, . . ."

(Our reference hereafter to subdivisions (d) and (f) will be to those subdivisions of Section 28.)

An ambiguity will be seen.

Prior felony convictions are patently, at least in most cases, *relevant evidence* bearing upon the credibility of a witness. Subdivision (f) says that such prior convictions *"shall . . . be used without limitation* for purposes of impeachment," while subdivision (d) recites that the use of such priors *shall be restricted* according to Evidence Code *section 352,* and other statutes.

Evidence Code section 352, states: "The [trial] court *in its discretion* may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Our italics.)

The ambiguity has been resolved by the state's high court's very recent (Mar. 11, 1985) decision of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], hereafter *"Castro."*

A threshold question appears. Some disagreement seems to exist among judges and lawyers as to the controlling effect of *Castro.*

*Castro*'s principal opinion was authored and signed by Justice Kaus, and signed by Justices Mosk and Broussard. Its holding was dichotomous.

The principal opinion first held that the "without limitation" language of subdivision (f) was nevertheless modified by subdivision (d)'s continuation of discretion in the trial court under Evidence Code section 352. In this holding the three justices were joined by the Chief Justice and Justice Reynoso, for a total of *five* justices.

The principal opinion's second holding was that any such prior felony conviction must be *relevant* to the issue of credibility, *and* that accordingly subdivision (f)'s "without limitation" provision related *only* to prior felony convictions involving "moral turpitude." In this, the principal opinion's justices were joined by Justice Grodin's concurring and dissenting opinion. On that holding the total was *four* justices.

It will be seen that the holdings of *Castro* were accordingly by a majority of the Supreme Court. And they are binding upon all of the lesser reviewing and trial courts of this state. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

We elaborate upon the application of Section 28, and *Castro,* to the appeal before us.

At the start of this discussion we observe the high court's comment in respect of Section 28: "Faced with a constitutional amendment adopted by initiative, . . ., we are obliged to set aside our personal philosophies and to give effect to the expression of popular will, as best we can ascertain it, within the framework of overriding constitutional guarantees." (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].)

*Castro*'s subject, Maria Castro, was charged with, and convicted of, receiving stolen property. At her trial, the court ruled that if she testified on her own behalf, she might be impeached by proof of her prior convictions of possession of heroin, and possession of heroin for sale. The trial court, as here, deeming itself without discretion under Evidence Code section 352,

had felt bound by the absolute "without limitation" language of subdivision (f).

The issues before the high court were whether the trial court had erred in relation to Section 28 and, if so, whether the error was harmless. The first assertion of error to be addressed was whether the trial court's ruling was compatible with Section 28.

*Castro*'s opinion was, understandably, extensive. Its gist, for our purposes, may reasonably be condensed to the following.

The Supreme Court was convinced "that section 28 was not intended to abrogate the traditional and inherent power of the trial court to control the admission of evidence by the exercise of discretion to exclude marginally relevant but prejudicial matter—as, indeed, is provided by Evidence Code section 352." (38 Cal.3d at p. 306.) It was said that there were considerations before the voters "which suggest that the trial court should not be stripped of [prior conviction] discretion." (*Id.*, at p. 313.) And, "the [Section 28] initiative itself expressed continued trust in the discretion of the trial courts; despite the mandatory admonitions, that discretion under section 352 was expressly retained." (*Ibid.*) At *Castro*'s conclusion it was "reemphasized" that "such admissibility is subject to *trial court* discretion."

The opinion had pointed out that the court in *Beagle* (*People* v. *Beagle, supra,* 6 Cal.3d 441) had "made it clear that *we did not intend to establish rigid standards* to govern the exercise of [the trial court's] discretion." (38 Cal.3d at p. 307.) Nevertheless, it said, "we handed down a series of decisions delineating the boundaries of permissible discretion." Such restrictive decisions were named: *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771], *People* v. *Woodard* (1979) 23 Cal.3d 329 [152 Cal.Rptr. 536, 590 P.2d 391], *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19], *People* v. *Spearman* (1979) 25 Cal.3d 107 [157 Cal.Rptr. 883, 599 P.2d 74], and *People* v. *Barrick* (1982) 33 Cal.3d 115 [187 Cal.Rptr. 716, 654 P.2d 1243]. "[H]owever [the *Castro* opinion said] the dissents [of such cases] expressed a minority view that the guidelines of *Beagle* had, in fact, become rigid limitations on the discretion of the trial court." (38 Cal.3d at p. 308.)

And the *Castro* court emphasized that: "[T]here seems to be little doubt that the drafters of section 28 *wanted a change and that the voters legislated it.*" (*Ibid.*)

*Castro* must fairly be read as holding that Evidence Code section 352's trial court discretion, where prior felony convictions are offered for impeachment, will not lightly be disturbed by the state's reviewing courts. The "rigid limitations" of the above-noted *Beagle-Antick-Rist,* etc. line of cases no longer stand as a matter of law, but the holdings of those cases are nevertheless legitimate considerations in the exercise of the trial court's discretion under Evidence Code section 352. But in such a case the trial court may *not* abdicate, but *must* exercise, its discretion.

Ruling on the remaining assertion of error, *Castro* held "that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves *moral turpitude,* even if the immoral trait is one other than dishonesty." (Italics added.)

The rationale of *Castro* on this issue was stated as follows.

"It is . . . appropriate that we remind ourselves of the precise progression of inferences which may lead a trier of fact to conclude that proof of a felony conviction may affect the credibility of a witness. The classic statement of the rationale for felony impeachment is that of Justice Holmes, written when he was still a member of the Supreme Judicial Council of Massachusetts: '[W]hen it is proved that a witness has been convicted of crime, the only ground for disbelieving him which such proof affords is the *general readiness to do evil* which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in a particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of *bad character* and unworthy of credit.' . . . It follows, therefore [the plurality opinion said] that if the felony of which the witness has been convicted does not show a 'readiness to do evil,' the fact of conviction simply will not support an inference of readiness to lie. . . . Nevertheless, it is undeniable that a witness' moral depravity of any kind has some 'tendency in reason' . . . to shake one's confidence in his honesty. . . . There is then some basis—however tenuous—for inferring that a person who has committed a crime which involves moral turpitude other than dishonesty is more likely to be dishonest than a witness about whom no such thing is known. Certainly the inference is not so irrational that it is beyond the power of the People to decree that in a proper case the jury must be permitted to draw it, if it wishes, and the 'no limitation' language of subdivision (f) makes it abundantly clear that the People so decreed." (38 Cal.3d at pp. 314-315.)

*Castro* then pointed out, in aid of the trial courts' future exercise of discretion, that prior convictions involving *moral turpitude* ordinarily included those for such offenses as involved dishonesty, or child abuse, or those committed by force and violence or brutality or threat thereof, or as in *Castro* possession of heroin for sale, or "moral depravity of any kind."

And the high court's previous rulings that prior convictions with moral turpitude which were "*remote*" (*People* v. *Antick, supra,* 15 Cal.3d 79), or "*similar*" to the charged offense (*People* v. *Rist, supra,* 16 Cal.3d 211; *People* v. *Fries, supra;* 24 Cal.3d 222; *People* v. *Spearman, supra,* 25 Cal.3d 107), or of a nonparty witness (*People* v. *Woodard, supra,* 23 Cal.3d 329), were inadmissible, were as noted, questioned. Prior convictions with moral turpitude which were only "marginally relevant" might be properly admitted; in such cases their probative value would be for the determination of the trier of fact.

We now apply *Castro* to the case at bench.

█ It will be remembered that the prior convictions of the case before us were burglary, automobile theft, and battery by a jail inmate upon a noninmate. As to the burglary and automobile theft convictions, moral turpitude was clearly involved. And, we opine, that battery by a jail inmate upon a noninmate, a crime of violence, demonstrates "a general readiness to do evil," and thus moral turpitude. All reasonably lay within the broad discretion reposed in the trial court by *Castro* and Evidence Code section 352.

But here, as we have pointed out, the trial court believing that it had none, *did not exercise its discretion.* In this it erred.

But, having read the entire record furnished us, we conclude that the evidence of Williams' guilt will reasonably be described as exceedingly strong. Upon our review of the entire record we are of the opinion that it is not reasonably probable that a result more favorable to defendant would have occurred in the absence of error. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Holmdahl, J., concurred.

NEWSOM, J.—I concur in the conclusion reached by the majority opinion that our high court in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111] held that article I, section 28, of the California Consti-

tution (section 28) insofar as it can be understood at all, requires a balancing of relevance against prejudice in the trial court as a limitation upon the admission into evidence of prior felonies.

A perusal of the political context in which the amendment was adopted leaves no doubt that the electorate intended by it to abolish all restrictions on the admissibility of prior felonies, as Justice Grodin's concurrence in *Castro* concludes. However, led by blind guides who were apparently unable to point in any clear direction, the People adopted instead a constitutional amendment which is a masterpiece of ambiguity and which cries out— not for explication which the majority opinion in *Castro* bravely attempted— but for extinction.

The second holding of *Castro,* as delineated by the majority opinion here, is that henceforth the test of admissibility shall also require a finding that, to be admissible, the felony must be one involving "moral turpitude," the equivalent, as said in *Castro,* of Justice Holmes' celebrated aphorism, "a general readiness to do evil."

It is a measure of the degradation of our language that a distinction between felonies which do or do not involve "turpitude" should have to be made. While it is true that the antecedents of the concept of felony are obscure and the reasons why a criminal act should be regarded as a felony rather than a misdemeanor are imperfectly understood, it had until fairly recent times been agreed that a felony is a crime involving wicked, base or shameful conduct. Thus, Eric Partridge gives as the root of "felony" the Middle English "fell," which meant "cruel," and itself derived from the Old French for "wicked." (Partridge, Origins (2d ed. 1959) p. 739.)

Today, however, in California among other jurisdictions, it is perfectly possible to commit a felony which, as Justice Kaus points out in *Castro,* "do[es] not connote moral laxity of any kind." (*Id.,* 38 Cal.3d at p. 316.) Thus, for example, the new genre of corporate securities crimes wherein the doing of a morally neutral but statutorily forbidden act merely "willfully" is by a convenient fiction said to comport with the requirement of mens rea as set forth in Penal Code section 20 and ignored with regularity by our courts. (Cf., i.e., *People* v. *Gonda* (1982) 138 Cal.App.3d 774, 779 [188 Cal.Rptr. 295], and cases cited therein.)

Under such circumstances of strict criminal liability, it is no wonder that our high court hesitates to permit the impeachment of a criminal defendant with the use of prior convictions which are entirely consonant with moral probity and from which even a Holmes would agree that no inference of a propensity toward evildoing could reasonably be drawn.

In my view, too, our high court has entered the murkiest of waters in charging trial courts with the duty of defining *which* felonies fall within the penumbra of moral turpitude, since that phrase has no fixed meaning in law and is usually defined in the vaguest terms as, for example, describing "an act of baseness, vileness or depravity" (2 Bouvier's Law Dictionary (Rawles' 3d rev. ed.) p. 2247), i.e., the language traditionally used to distinguish a felony from a misdemeanor. The difficulty of determining whether such vileness inheres in a given act is well illustrated in *People* v. *Wolfe* (1964) 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], wherein the court struggled with the question of whether a teenage boy's murder of his mother involved a sufficient degree of personal turpitude to justify his conviction for first instead of second degree murder.

In conclusion, I think section 28 is a document so deeply flawed that it cannot be salvaged except at the cost of profound ongoing confusion in our judicial system.

On the facts of the case at bench, I agree that the trial court's refusal to exercise its discretion under Evidence Code section 352 was harmless error.