[No. F006032. Fifth Dist. Sept. 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EARL FLANAGAN, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to *California Rules of Court,* rule 976.1, *this opinion is certified for publication* with the exception of parts I through IV.

**COUNSEL**

Terry E. Bunfill, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Eddie T. Keller, Wanda Hill Rougan and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BALLANTYNE, J.—

### STATEMENT OF THE CASE

On April 17, 1985, an information was filed charging appellant, James Earl Flanagan, with four counts. Count I alleged that on March 22, 1985, appellant willfully, unlawfully, and feloniously had in his possession a completed check with the intent to utter and pass the check with the intent to defraud Save Mart, a violation of Penal Code section 475a. Count II alleged that appellant, on or about March 22, 1985, did willfully, unlawfully, knowingly and feloniously buy and receive a stolen check, a violation of Penal Code section 496. Count III alleged that appellant on or about March 16, 1985, did willfully, unlawfully and fraudulently and feloniously make, alter, forge and counterfeit a certain check in the sum of $275, and did utter and pass the check with the intent to defraud Valley Electrical Services, Inc. and Bank of America, Inc., a violation of Penal Code section 470. Count IV alleged that appellant on or about March 16, 1985, willfully, unlawfully and feloniously had in his possession a completed check with the intent to utter and pass the check with the intent to defraud Liberty Market, a violation of Penal Code section 475a. Count IV was an alternative to count III.

At trial, after the People rested, appellant orally moved the court for a judgment of acquittal pursuant to Penal Code section 1118.1 as to count III and moved to exclude felonies for impeachment purposes should he elect to testify. The court promptly denied the motion for acquittal and ruled the prosecution could impeach appellant with the priors involving moral turpitude.

The appellant was found guilty on counts I, II and III and was acquitted on count IV.

After denying probation and denying appellant's request for commitment to the California Rehabilitation Center (CRC), the court sentenced appellant to the upper term of three years on count III, plus consecutive terms of eight months on each of counts I and II.

## FACTS

On March 16, 1985, David Shabazian was working as a cashier for the Liberty Market in Turlock, California, when appellant, accompanied by an unidentified female, approached his checkstand with some groceries. Appellant attempted to pay for the groceries with a check for the sum of $275. The check was drawn in favor of Charles R. Gill on the account of Valley Electrical Services, and reflected the signature of Howard Stone. Shabazian requested identification from appellant, who presented a California driver's license issued in the name of Charles R. Gill. Shabazian summoned assistant manager Greg Danbom to the checkstand and Danbom took the check to the office to have it approved. Shortly thereafter both the unidentified female companion and appellant left the store.

On March 22, 1985, appellant presented a check to Craig Alan Wood, assistant manager of the Save Mart store in Ceres, California, to pay for approximately $20 worth of grocery items. The check was drawn on the account of Valley Electrical Services issued in the name of Charles R. Gill. Having previously cashed a similar check, Wood was aware that the check was stolen and summoned other employees to the checkstand. Meanwhile he began ringing up the groceries. When assistance arrived, Wood confronted appellant with the fact that the check was stolen. Appellant responded that he had just gotten paid and attempted to leave the store; a struggle then ensued and a store employee restrained the appellant.

The two checks involved herein, dated March 15, 1985, and March 16, 1985, respectively, were drawn against the checking account of the now defunct Valley Electrical Services, Inc., with Bank of America in Modesto, on an account that had been closed since June 1, 1983. The checks reflected the signature of Howard Stone. Carl Schenewark, one of the owners of Valley Electrical Services, Inc., testified that he did not know a person by the name of Howard Stone and that such person was not authorized to sign checks for the company, nor did Schenewark know a person by the name of Charles Gill.

Detective Bernard Roberts of the Ceres Police Department interviewed appellant on March 22, 1985. Appellant told Detective Roberts that he obtained the checks from Earl Williams as payment for work he had performed. When asked why the name of Charles Gill appeared on the check, appellant stated that he didn't look at the check when it was given to him. At the end of the conversation, appellant retracted his entire statement saying everything he had just said was a lie; appellant then indicated he did not want to tell the truth at that time.

On March 27, 1985, Thomas Vincent, a detective with the Turlock City police, contacted appellant at the Stanislaus County jail. Appellant admitted to Vincent passing about five or six bad checks, one in Ceres, one in Oakdale, two in Stockton, and one other in a place he could not recall. Appellant further admitted that he knew the checks were stolen and that he did not have permission to have the checks. He indicated that he didn't fill out the checks but received them as is. Finally, he stated Charles Gill was an acquaintance from Ceres and that he did not know a Howard Stone.

DISCUSSION

I.-IV.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

V.

WHETHER THE TRIAL COURT IMPROPERLY HELD APPELLANT'S PRIOR FELONY CONVICTIONS ADMISSIBLE FOR IMPEACHMENT PURPOSES.

Defense counsel moved the court to exclude evidence of appellant's prior felony convictions for impeachment purposes were appellant to choose to testify. The district attorney indicated appellant had suffered the following prior felony convictions: a 1964 conviction for rape; a 1971 conviction for burglary and receiving stolen property; a 1974 conviction for forgery; and a 1965 conviction for felonious assault. The district attorney then stated that he believed all of the convictions, aside from the assault, would be admissible for impeachment purposes under *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111] as offenses involving moral turpitude. He further indicated that he intended to use all but the felonious assault for purposes of impeachment. Defense counsel argued that *Castro* did not abrogate the trial court's discretion to exclude prior felony convictions when their probative value is outweighed by the prejudicial impact. Accordingly, the court should find the prejudicial impact of the felonious assault and the rape outweigh any probative value and that all of appellant's priors, the 1964 rape, the 1965 assault and the 1974 forgery, are extremely remote in time and therefore neither relevant nor probative. Defense counsel denied that his client suffered the 1971 burglary conviction. (The record supports this denial.) The trial court then ruled: "The court will go along with—[the majority opinion in *Castro*]—the majority opinion would be that those crimes involving moral turpitude will be received. And the court will allow the introduction of felonies as requested by the People." When defense counsel inquired as to whether the ruling included the rape, the court

*See footnote on page 764, *ante.*

responded, "Yes, it will include the rape. That certainly is a crime of moral turpitude." The court continued: "All right, the Court has weighed this and feels that the jurors will note the particular type of crime that is involved here and the crime of rape and give undue[1] effect on their evaluation." Apparently due to the court's ruling the priors admissible, appellant did not testify.

(Since the district attorney did not intend to use the assault, and the burglary prior was not supported by the record, the only priors we are confronted with examining are the 1964 rape and the 1974 forgery.)

Appellant contends that the trial court erred in finding the prior felonies admissible for impeachment purposes. Specifically, appellant argues that the prior convictions, especially the rape which occurred in 1964, were remote and that the court mistakenly found appellant's rape conviction involved moral turpitude since appellant was actually convicted not of rape but of statutory rape, a crime that does not necessarily involve moral turpitude.

In *People* v. *Castro, supra,* 38 Cal.3d 301, the California Supreme Court considered whether article I, section 28, subdivision (f) of the Constitution (Prop. 8) was intended to abolish all judicial discretion to limit the use of prior convictions for purposes of impeachment. The court held that ". . . always subject to the trial court's discretion under [Evidence Code] section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d) [of section 28], as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*Id.,* at p. 306.)

■■ Thus, when the prosecution proposes to use a prior felony conviction for purposes of impeachment, the trial court must indulge in a two-part inquiry. First the court must determine if the prior felony conviction involves moral turpitude; if not, the prior is not admissible; if so, the court must, *on the record,* exercise its discretion in admitting or excluding the prior. Specifically, the court must appraise the prejudicial impact of admitting the prior, determine the probative value, and determine if the probative value is substantially outweighed by the possibility that the admission will create a substantial danger of undue prejudice. (*People* v. *Parrish* (1985) 170 Cal.App.3d 336, 374 [217 Cal.Rptr. 700]; *People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468].)

---

[1]This language is somewhat disturbing in that it (the rape conviction) reflects the judge's evaluation that the jury will give the priors "undue" effect. It appears, however, that what the court meant to say is that the jury will not let the rape prior unduly affect their evaluation. Appellant does not challenge this interpretation of the record, and the minute order reflects that the court ruled that the prior rape conviction was admissible for impeachment purposes.

The record reveals that the court was aware that it retained discretion under Evidence Code section 352 to exclude a prior involving moral turpitude. ■ Nevertheless, the record does not *affirmatively show,* at least as to the prior forgery, that the trial judge did in fact weigh prejudice against probative value. This was *Castro* error.

In the recent case of *People* v. *Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173], the Supreme Court of California adopted the rule announced in *Luce* v. *United States* (1984) 469 U.S. 38 [83 L.Ed.2d 443, 105 S.Ct. 460] that the denial of a motion to exclude a prior conviction offered for impeachment is not reviewable on appeal if the defendant fails to testify. The rule was made prospective only, however, and the court set forth the procedure to be followed by appellate courts in applying *People* v. *Castro* to cases tried before the *Castro* decision. We are ordered first to determine whether each of the prior convictions at issue in the instant case would be admissible in the trial court's discretion or inadmissible as a matter of law. ■ It is beyond dispute that the crime of forgery inherently involves dishonesty and readiness to lie, and thus involves moral turpitude. (*People* v. *Castro, supra,* 38 Cal.3d at pp. 315-316; *People* v. *Parrish, supra,* 170 Cal.App.3d at p. 349.) ■ Similarly, the crime of rape has been held to constitute a crime of moral turpitude. (*People* v. *Mazza* (1985) 175 Cal.App.3d 836, 844 [221 Cal.Rptr. 640].) It is not clear, however, whether the crime of statutory rape involves moral turpitude.

■ In making the determination, whether or not the crime involves moral turpitude, the trial court looks only to the crime in the abstract and not to the particularized underlying facts. ■ As the Supreme Court stated in *People* v. *Castro, supra,* to avoid confusion of issues and unfair surprise by the introduction of extrinsic evidence on the prior, "a witness' prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Id.,* at p. 317.) Applying this standard to the defendant's 1964 conviction for statutory rape, we are not persuaded that it would satisfy this requirement.

At the time of defendant's prior conviction, section 261 provided in pertinent part: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either [*sic*] of the following circumstances:

"1. Where the female is under the age of 18 years; . . . ."

Thus, at the time of defendant's conviction the least adjudicated elements of that conviction were: (1) the act of sexual intercourse, (2) with a female to whom defendant was not married, and (3) when the female was under

the age of 18. It is important to note that a violation of the statute did not require that the defendant be aware of the female's age. It is the absence of this culpable mental state as a necessarily adjudicated element of statutory rape that persuades us defendant's prior conviction did not involve moral turpitude.

As previously pointed out by this court in *People* v. *Calban* (1976) 65 Cal.App.3d 578, 584 [135 Cal.Rptr. 441]: "In every crime there must exist a union or joint operation of act or conduct and criminal intent or criminal negligence. (Pen. Code, § 20; [citations omitted].) Normally, persons who commit an act through misfortune or by accident with no evil design, intention or culpable negligence are not criminally responsible for the act."

However, in criminal law there are a very limited number of offenses for which criminal sanctions may be imposed despite the perpetrator's lack of any culpable mental state. A well-recognized example of such a "strict liability" offense is statutory rape. The United States Supreme Court recognized this offense as an exception to the general rule requiring a union of criminal intent and conduct, noting that "the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." (*Morissette* v. *United States* (1952) 342 U.S. 246, 251, fn. 8 [96 L.Ed. 288, 294, 72 S.Ct. 240].)

Not until July 9, 1964, did the California Supreme Court recognize as a defense to a charge of statutory rape the perpetrator's reasonable and good faith, albeit mistaken, belief that the female was at least 18 years of age. (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 535-536 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].) The date of the *Hernandez* decision is important because in the matter before us the defendant was sentenced on the statutory rape charge on July 3, 1964, and could not have had the benefit of the *Hernandez* decision.

The express basis for the Supreme Court's ruling in *Hernandez* was the lack of criminal intent. A similar result was earlier reached in *People* v. *Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850], in which the Supreme Court used similar reasoning to conclude that a defendant was not guilty of bigamy, another traditional "strict liability" offense, "if he had a bona fide and reasonable belief that facts existed that left him free to marry."

In *Castro,* it was made abundantly clear that ". . . a prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*People* v. *Castro, supra,* 38 Cal.3d 301, 317.) Hence, the fact of defendant's 1964 conviction for statutory rape shows nothing more than that he engaged in an act of

sexual intercourse, of which he was presumably aware, that the female involved was not his wife (also presumably a fact known to defendant), but that the female was not yet 18 years old, whether or not defendant knew of the female's minority and thus manifested some culpability, i.e., some knowing readiness to do evil, as to the least adjudicated elements.

We are aware that there may be convictions for statutory rape where the circumstances may be aggravated, as where the female participant is very young and unsophisticated and yielded to the persuasion of a much more mature and sophisticated male. However, as the court made clear in *People* v. *Castro, supra,* the particularized facts are beyond our review. We are directed to look only to the fact of the conviction and the least adjudicated elements of the offense, and we must conclude that when those elements fail to manifest a readiness to do evil as hereinabove discussed, then the conviction is not one involving moral turpitude and may not be used for impeachment. Thus, we conclude that defendant's 1964 conviction for statutory rape was not a conviction involving moral turpitude and should not have been admitted.

The Supreme Court in *People* v. *Collins, supra,* 42 Cal.3d 378 further instructs that where the defendant does not testify, the judgment shall be reversed and remanded so that the trial court may exercise its discretion as to whether or not the prior conviction should have been admitted under *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] guidelines, and also to determine whether or not there has been prejudicial error in the first instance.

■ While recognizing the instant case is post-*Castro* and hence *People* v. *Collins, supra,* does not control, we believe that when, as here, the record fails to disclose that the trial judge engaged in the requisite weighing process, we are presented with essentially the same situation addressed in *People* v. *Collins, supra,* i.e., failure of the court to exercise discretion. Pursuant to the spirit of *People* v. *Collins, supra,* we remand and direct the trial court to follow the procedure set forth in *Collins* when a defendant does not testify after a denial of his motion to exclude. Specifically, on remand, the trial court shall exclude the prior conviction for statutory rape, entertain appellant's offer of proof, and exercise its discretion *on the record* in excluding or admitting appellant's prior conviction for forgery. The court shall then weigh prejudice of any error under the test of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] by determining whether it is reasonably probable that the error in ruling such convictions admissible affected the result. If

the court finds no prejudice, then the court shall reinstate the judgment and stay execution of sentence as to count II as required by section 654 of the Penal Code. If the court finds prejudice, it shall order a new trial.

### DISPOSITION

The judgment is reversed and the cause is remanded for the trial court to conduct a hearing and proceedings as hereinabove set forth.

Franson, Acting P. J., and Woolpert, J., concurred.

A petition for a rehearing was denied October 15, 1986, and respondent's petition for review by the Supreme Court was denied January 15, 1987.