[No. A032395. First Dist., Div. One. May 8, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY DWAYNE FULCHER, Defendant and Appellant.

**COUNSEL**

Gregory J. Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ELKINGTON, Acting P. J.—Defendant Anthony Dwayne Fulcher (Fulcher) appeals from a judgment entered upon a jury's verdict finding him guilty of the crime of first degree burglary. He makes no contention that the evidence placed before the jury did *not* constitute substantial proof of his guilt.

■ The first of Fulcher's appellate *contentions* is that: "The court erred in denying appellant's motion to suppress a statement obtained in violation of appellant's rights under *Miranda* v. *Arizona.*"

We state the facts as relevant and material to the contention.

A citizen reported to police headquarters that a burglary had just occurred at a certain address, and two officers promptly responded. The time was about six o'clock in the morning. One of the officers testified: "On the way, we kept getting broadcasts from the dispatcher, she said that the witness had said they are leaving the house. They are climbing over the back fences going eastbound. There are two M.N.'s. Before we had stopped and gotten out of the car, as she had already told us, one of them is a slender build, brown leather jacket, blue jeans, with a brown snap-brim cap. And at that point, we didn't receive any other information. . . . [We saw a person], there was no one else on the street. I felt obligated to at least talk to him and see if maybe he didn't see someone else."

On closer observation the person matched the clothing description "in some respect" of a person described in the report. The officers beckoned him to come over, which he did. Because of the time of the day and for the officers' "personal safety" he was pat searched for weapons. While being pat searched, an officer asked him "where he was coming from." The reply was "I just came from a friend's house" and he pointed "across the street." According to an officer, the man was being *detained* for investigation, and they were *not* "trying to obtain any incriminating admissions from him." They were just making conversation.

At the time Fulcher was asked "where he was coming from," he had not been given the admonition sometimes required by *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

In the superior court, and in this court, Fulcher has argued that reversible error occurred from the failure to timely give the *Miranda* admonition. And he argues that he was prejudiced by the admission in evidence of his reply.

Upon its ruling adverse to Fulcher, the superior court stated the following:

"All right. I am prepared to rule on the matter. I think it's a terribly close issue. At each of the criteria of *Miranda,* I think it's a close question on the issue of whether there was a custody or not as opposed to a temporary detention, whether there was a process of interrogation, even whether there was elicited an incriminatory response.

"There is a question in my mind whether this even constitutes an admission or confession, although it's certainly going to be used by the prosecution in a way that is deleterious to the defendant's interests.

"I'm going to deny the motion to suppress, mostly it's based upon my finding of credibility based upon the officer's statements. I believe him when he tells me that he had no particular intention to be engaging in a process of interrogation designed to elicit incriminating response. . . .

"I think the record will reflect that this was the officer's very first contact with the defendant. He was in the process of a pat-down search, and I think it can be argued forcefully that this was, in fact, a temporary detention that had not yet matured into a custody situation, although custody certainly came thereafter.

"The fact that no further questions were asked, nor did the officer put it in his report, because he didn't attach any particular significance, supports in my mind the officer's credibility with respect to these matters about which he testifies.

"So, I am going to rule that under all of the circumstances of this case, the *Miranda* warning was not required at that instant that the statement was made."

The trial court's ruling on a *Miranda* issue may not be set aside by us unless it is *"palpably erroneous."* A ruling palpably erroneous is one lacking support of substantial evidence. And of course when two or more inferences can reasonably be deduced from the facts, either deduction will be supported by substantial evidence, and a reviewing court is without power to substitute its deductions for those of the trial court. (*In re Eric J.* (1979) 25 Cal.3d 522, 527 [159 Cal.Rptr. 317, 601 P.2d 549].)

We find substantial evidence in support of the trial court's ruling, and neither error nor abuse of discretion.

■ The remaining *contention* of the appeal is that: "The court erred in denying appellant's [*People* v. *Beagle* (1972) 6 Cal.3d 441] motion to bar the prosecution from using his 1978 statutory rape conviction for impeachment purposes."

Recently the state's high court in *People* v. *Castro* (1985) 38 Cal.3d 301, 314 [211 Cal.Rptr. 719, 696 P.2d 111], held that only prior convictions of crimes involving "moral turpitude" were available, *in the trial court's discretion,* for impeachment, and defined such crimes as those indicating a *"general readiness to do evil."*

We are told by *People* v. *Collins* (1986) 42 Cal.3d 378, 389 [228 Cal.Rptr. 899, 722 P.2d 173], that where, as here, the defendant, following an adverse *Beagle* ruling, does *not* testify: "The appellate court should first decide whether the prior convictions are (1) admissible or excludable in the trial court's discretion or (2) inadmissible as a matter of law." Here we conclude that the prior conviction is *not* "inadmissible as a matter of law," it being a crime of "moral turpitude." The reasons for our conclusion follow.

Fulcher's earlier crime had been the so-called "statutory rape" offense of Penal Code section 261, a felony, and for which he had served a prison term. The "statutory rape" provision of Penal Code section 261 was in 1970 repealed and reenacted in substantially similar form, as "unlawful sexual intercourse" by Penal Code section 261.5, and continued as a felony (§ 264).

"Unlawful sexual intercourse" is defined by Penal Code section 261.5 in this manner: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." And *added to this definition* by *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673], is the holding that a defense to such a charge exists where the accused had held, in good faith, a reasonable belief that the prosecutrix has attained the age of consent, i.e., 18 years. *People* v. *Hernandez* also states, referring to statutory rape as defined by the court: "The object and purpose of the law are too plain to need comment, the crime *too infamous* [our italics] to bear discussion" (p. 533), and that "[t]here can be no dispute that a *criminal intent* [our italics] exists when the perpetrator proceeds with utter disregard of, or in the lack of grounds for, a belief that the female has reached the age of consent" (p. 534). Such had been the law since 1964, long before commission (1968) of the act resulting in the earlier conviction of Fulcher. It may thus be said that at the time of Fulcher's earlier act and conviction (and

now) the Penal Code, as interpreted by *People* v. *Hernandez, supra,* proscribed sexual intercourse with a female under the age of 18 years by one without a good faith and reasonable belief that the female was of the age of consent, and that such is an *"infamous"* crime.

Under the Penal Code and under *People* v. *Hernandez, supra,* we hold that the crime of "statutory rape" or "unlawful sexual intercourse" indicates a "general readiness to do evil," and that it is thus necessarily a crime involving *"moral turpitude."*

*People* v. *Flanagan* (1986) 185 Cal.App.3d 764 [230 Cal.Rptr. 64], lends no aid to *Fulcher's* appeal. There the court was concerned with a prior conviction of statutory rape, for which the defendant, Flanagan, was sentenced July 3, 1964, six days before the high court's announcement, July 9, 1964, of *People* v. *Hernandez, supra,* 61 Cal.2d 529. *People* v. *Flanagan, supra,* states (p. 772): "Not until July 9, 1964, did the California Supreme Court recognize as a defense to a charge of statutory rape the perpetrator's reasonable and good faith, albeit mistaken, belief that the female was at least 18 years of age. (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 535-536. . . .) The date of the *Hernandez* decision is important because in the matter before us the defendant was sentenced on the statutory rape charge on July 3, 1964, and could not have had the benefit of the *Hernandez* decision." "It is important to note that a violation of the statute did not [*then*] require that the defendant be aware of the female's age. It is the absence of this culpable mental state as a necessarily adjudicated element of statutory rape that persuades us defendant's prior conviction did not involve moral turpitude."

■ However, here Fulcher, as indicated, did *not* testify at his trial.

We are further advised by *People* v. *Collins* as to our procedure in such cases where a defendant does *not* testify. "In that event the appellate court does not know what the defendant's testimony would have been, and hence has no way of assessing the probable effect of the error on the verdict. Rather than speculating on the matter, however, in all such cases the court should reverse the judgment and remand the cause to allow the trial court not only to exercise its discretion but also to determine prejudice in the first instance." (42 Cal.3d at p. 393.) We interpret this language to say that in such event, the trial court shall determine how, in the light of prejudice, if any, to Fulcher, (1) it would have exercised its discretion on the *Beagle* motion, (2) that if it would have exercised its discretion favorably to Fulcher, the judgment stands reversed with the cause to be retried, and (3) that if such discretion would have been exercised unfavorably to Fulcher, our reversal is set aside and the judgment is affirmed.

The judgment is accordingly reversed, and the cause is remanded to the superior court to allow that court not only to exercise its discretion but also to determine prejudice in the first instance, and otherwise to proceed in accordance with law, this opinion, and *People* v. *Collins, supra,* 42 Cal.3d 378.

Holmdahl, J., concurred.

**NEWSOM, J.,** Concurring and Dissenting.—Believing as I do that unlawful sexual intercourse is the classic example of a malum prohibitum crime which no more shows a general readiness to do evil than does, say, conspiracy to tattoo a person under the age of 18, (*People* v. *Castro* (1985) 38 Cal.3d 301, 314, fn. 7 [211 Cal.Rptr. 719, 696 P.2d 111]), I would conclude that Fulcher's statutory rape prior is inadmissible as a matter of law under the *Collins* test.

On remand, therefore, I would direct the trial court not to permit use of the statutory rape prior for the purpose of impeachment.