[No. A037098. First Dist., Div. Four. Dec. 18, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
STACCATO TONY CLARIDA, Defendant and Appellant.

[Opinion certified for partial publication.*]

_____

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Eric Liberman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Peter Crook, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHANNELL, J.—A jury convicted appellant Staccato Tony Clarida of possession and sale of cocaine. (Health & Saf. Code, §§ 11350, 11352.) Sentenced to state prison, Clarida appeals his conviction, challenging (1) the sufficiency of evidence of possession of cocaine; and (2) his impeachment with a prior conviction. We affirm the judgment.

## I. FACTS

On June 26, 1986,[1] a confidential informant told San Mateo Deputy Sheriff Kenneth George that he could purchase narcotics at an apartment on Clark Street in East Palo Alto. Appellant Staccato Tony Clarida had told the informant a week or two earlier that he could "come there and buy dope." The informant had a criminal record, but had provided accurate information to George before, providing the basis of many search warrants and leading to many arrests. At 8 p.m. that evening, the informant was searched, given county money, and outfitted with a transmitter. After completing an unrelated purchase nearby, George saw the informant drive up to 2387 Clark Street. At 9 p.m., officers observed him enter apartment 4 and heard the cocaine purchase being made. Conversation heard over the transmitter led the officers to believe that people in the apartment were freebas-

---

[1] All dates refer to the 1986 calendar year.

ing cocaine and that a police scanner was in use. Scanners monitor police radio communications and are commonly used by narcotics dealers.

As the informant was leaving the apartment, the seller saw Michael Pugliese, a narcotics officer, parked outside the building. The seller would not allow the informant to leave until the officer was gone. Pugliese, who was also listening to the informant's transmission, moved their car out of sight. The informant was allowed to leave and the other occupants of the apartment were hurried out by the seller. The officers and the informant met at a prearranged site, a dead-end street in a deserted industrial area a few blocks from Clark Street. The informant gave George what he had purchased—.14 grams of cocaine, a usable amount—and the officer began to "debrief" him. Suddenly, the officer noticed a car with two or three Black men in it driving toward them from the direction of Clark Street. The occupants of the car looked at the informant and the officers, made a U-turn and sped off. While other officers attempted to follow the car, George followed the informant out of the area.

As a result of this incident, the "debriefing" was shortened and hurried. The informant's description of events matched what George had heard over the transmitter. He also described the seller as a 33-year-old Black man, 5 feet 10 inches tall, weighing 160 pounds, with long hair and a light mustache. The informant was paid $50 for this purchase. The officers did not attempt to determine who had leased apartment 4, as it was their experience that a narcotics dealer would not lease an apartment under his name.

On the basis of the information he did have, George obtained a warrant to search apartment 4 at 2387 Clark Street. At 3 p.m. on July 10, Pugliese executed the warrant. After twice knocking and announcing their status as police officers and hearing no response, Pugliese and other officers forced open the door to apartment 4. Pugliese saw two people in the apartment: a partially clad woman lying across the doorway and, five feet away from her, Clarida sitting on a couch. The woman was under the influence of narcotics at the time of execution of the warrant; the officer did not know whether Clarida was awake or asleep. A bowl containing 0.2 grams rock cocaine, pipes, and a razor blade was at Clarida's feet. A further search of the apartment turned up a traffic citation, dated July 3, with Clarida's name on it; a police scanner; and a man's clothing. Clarida did not appear to be under the influence of narcotics, nor did the officers find any drugs or paraphernalia on him at the time of his arrest. However, he did have over $200 in cash in his bag, which Pugliese believed was from the sale of narcotics. Clarida was arrested on July 10.

Later, the informant identified Clarida as the seller in a photographic lineup, a pretrial physical lineup, and in court. The informant testified that he had no doubt about the accuracy of his identifications.

Clarida was charged with one count of selling cocaine and one count of possessing it. At trial, Clarida testified in his own defense. He denied committing both offenses. He testified that he did not live in the apartment—that it was occupied by some friends and he was helping them move on July 10 when he fell asleep there. When he went to sleep, he was alone in the apartment and there was no cocaine there. When a police officer woke him, the woman and the cocaine had appeared. Clarida testified that his mother had given him $200 to pay a bill for her and that his traffic citation was in his wallet, not in the apartment. He explained that he was not at the apartment at all on June 26. His family testified that Clarida did not live on Clark Street and was working at his mother's home on June 26. His mother testified that she had given her son $200 on July 10; his sister testified that when she saw him on July 10 at the apartment, Clarida was about to go to sleep.

Clarida admitted his prior felony conviction for battery on a peace officer, specifically of Michael Pugliese. During rebuttal, Pugliese testified about Clarida's prior conviction, which stemmed from an incident in which Clarida kicked him in the head. For the most part, the defense attempted to discredit the informant's identifications and veracity. Clarida testified that at the time of his arrest, he was 26 years old, 6 feet 2 inches tall, weighed 185 to 190 pounds, and wore his hair short—different from the man that the informant described to George. In argument, defense counsel pointed out these discrepancies again.

The jury found Clarida guilty of both charges. The trial court found that the prior conviction allegation was true. His motion for new trial was denied and he was sentenced to state prison for five years, eight months. Clarida filed a timely notice of appeal.

## II.  SUFFICIENCY OF EVIDENCE*

. . . . . . . . . . . . . . . . . . . . .

## III.  IMPEACHMENT WITH PRIOR CONVICTION

Clarida also contends that the trial court erred by allowing the People to use his prior conviction to impeach him. Before trial, Clarida moved to preclude the People from using his prior battery conviction (Pen. Code, § 243, subd. (b)) for impeachment purposes. At the hearing on the motion, Clarida's counsel explained that if the trial court found the crime to be one

---

*See footnote, *ante,* page 547.

of moral turpitude, the court was required to weigh the probative value of the evidence against its prejudicial effect. Immediately thereafter, the matter was submitted and the motion denied without comment.

■ First, Clarida suggests that battery on a peace officer is not a crime of moral turpitude. A defendant may be impeached by a prior conviction only if it involved a crime of "moral turpitude." (*People* v. *Castro* (1985) 38 Cal.3d 301, 315-316 [211 Cal.Rptr. 719, 696 P.2d 111]; see *People* v. *Collins* (1986) 42 Cal.3d 378, 389-390 [228 Cal.Rptr. 899, 722 P.2d 173].) Attempted battery with a deadly weapon (*People* v. *Cavazos* (1985) 172 Cal.App.3d 589, 593-595 [218 Cal.Rptr. 269] [assault with deadly weapon]) and battery of a jail inmate (*People* v. *Williams* (1985) 169 Cal.App.3d 951, 957 [215 Cal.Rptr. 612]) are crimes of moral turpitude; a fortiori, battery on a peace officer must also be a crime of moral turpitude. (See *People* v. *Castro, supra,* 38 Cal.3d at p. 314 [moral turpitude as "readiness to do evil"].)

■ In the alternative, Clarida claims that reversal is required because the trial court failed to state on the record that it balanced the probative value of the evidence against its prejudicial effect. Under *Castro,* the trial court must exercise its discretion under Evidence Code section 352 to admit or exclude evidence of the prior conviction. (*People* v. *Castro, supra,* 38 Cal.3d at pp. 316-317; *People* v. *Hunt* (1985) 169 Cal.App.3d 668, 675 [215 Cal.Rptr. 429].) In *Castro,* the trial court erroneously believed it had no discretion to exclude evidence of a defendant's prior conviction. (See *People* v. *Castro, supra,* 38 Cal.3d at p. 317.) Here, the trial court, after hearing Clarida's counsel explain its duty to exercise its discretion, promptly denied the motion to preclude impeachment use of the prior conviction without stating whether or not it engaged in this balancing process.

Recently, the Fifth District Court of Appeal held that the trial court commits *Castro* error if the record does not affirmatively show that it engaged in this weighing process. (See *People* v. *Flanagan* (1986) 185 Cal.App.3d 764, 771 [230 Cal.Rptr. 64].) *Flanagan* bases its conclusion on the California Supreme Court decision in *People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468]. (*People* v. *Flanagan, supra,* 185 Cal.App.3d at p. 771; see also *People* v. *Parrish* (1985) 170 Cal.App.3d 336, 347-348 [217 Cal.Rptr. 700].) Clarida urges us to apply *Flanagan* and find error in his case. (See also *People* v. *Frank* (1985) 38 Cal.3d 711, 731-732 [214 Cal.Rptr. 801, 700 P.2d 415] [error].)

The Second District Court of Appeal considered and rejected *Flanagan*. (See *People* v. *Johnson* (1987) 193 Cal.App.3d 1570, 1576-1577 [239 Cal.Rptr. 190], review den. Nov. 24, 1987; *People* v. *Lewis* (1987) 191 Cal.App.3d 1288, 1296 [237 Cal.Rptr. 64], review den. Aug. 17, 1987.)

*Johnson* relied on its own California Supreme Court case (see *People* v. *Montiel* (1985) 39 Cal.3d 910, 924 [218 Cal.Rptr. 572, 705 P.2d 1248]) in which the high court, noting *Green,* found that an express statement of Evidence Code section 352 factors and an assessment of them was not absolutely necessary. (*People* v. *Johnson, supra,* 193 Cal.App.3d at p. 1576.) Applying *Montiel,* the *Johnson* court reasoned that the "content and context of the argument that preceded the court's ruling, and the nature of the ruling itself, adequately demonstrates a reflection and weighing of Evidence Code section 352 factors. There can be no doubt that the trial court was aware of the discretion that it had, and that its discretion was exercised. There is an adequate record for appellate review." (*Id.,* at p. 1577.)

The signals from the high court are somewhat confusing. The language of *Green* stating that "the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value" and that of *Frank* to the effect that the trial court must make "an explicit determination that [the] risk of undue prejudice did not substantially outweigh the probative value of the evidence" allow Clarida to argue that a trial court errs if it does not invoke these "magic words" when deciding an Evidence Code section 352 motion. (*People* v. *Green, supra,* 27 Cal.3d at p. 25; *People* v. *Frank, supra,* 38 Cal.3d at p. 732.) In *Montiel,* after hearing defense counsel observe that the motion was "a 352 question," the trial court responded that the issue was "a discretionary thing." The California Supreme Court found this exchange sufficient to satisfy *Green,* despite the lack of an express statement such as Clarida urges that *Green* requires.

■ As the *Montiel* court noted, the purpose of the affirmative showing is "to furnish the appellate courts with the record necessary for meaningful review of any ensuing claim of abuse of discretion" and "to ensure that the ruling [is] 'the product of a mature and careful reflection on the part of the judge.' " (*People* v. *Montiel, supra,* 39 Cal.3d at p. 924.) We believe that *Montiel* offers the sounder interpretation on this issue. ■ In the context of the instant case, while Clarida's trial judge did not expressly state that he engaged in this weighing process, the context of his ruling demonstrates that he did. (*People* v. *Johnson, supra,* 193 Cal.App.3d at pp. 1575-1577; *People* v. *Lewis, supra,* 191 Cal.App.3d at p. 1296.) No doubt it would be better practice for a trial judge to make a clear record of its weighing process; but to establish error on appeal, an appellant should show more than a silent record. He or she should make an affirmative showing of error, something Clarida has not done. (See *People* v. *Courtney* (1985) 174 Cal.App.3d 1004, 1006-1007 [220 Cal.Rptr. 328] [*Fritz* case]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 418, pp. 415-417.) Accordingly, we find no *Castro* error.

■ Even if the trial court erred, the error would be harmless. (See *People* v. *Montiel, supra,* 39 Cal.3d at pp. 924-925; *People* v. *Green, supra,* 27 Cal.3d 1, 26-27.) After defense counsel summarized the *Castro* test for the trial court, "the issue whether the probative value of the evidence outweighed its prejudicial effect was before the court and plainly formed the basis of its ruling admitting the evidence." (*People* v. *Frank, supra,* 38 Cal.3d at p. 732 [admission of other-crimes evidence].) In fact, the prior conviction evidence in this case presented "a paradigmatic example of the type of evidence the probative weight of which may justify admission despite its prejudicial effect." (See *ibid.*) The prior offense is a crime of moral turpitude and thus admissible to impeach a criminal defendant. The 1982 prior conviction for battery on a peace officer was not remote in time; battery is not a similar offense to those for which Clarida was on trial; and Clarida was not deterred from testifying in his own defense by the knowledge that he would be impeached with this prior conviction. (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 453-454 [99 Cal.Rptr.313, 492 P.2d 1].) These pre-Proposition 8 guidelines, which made *exclusion* of prior conviction evidence more likely than under present law, would support a trial court's decision to *admit* this evidence. "In the face of such a clear showing that the evidence was properly received, the court's omission to recite for the record its implied finding that probativeness outweighed prejudice did not result in a miscarriage of justice." (*People* v. *Frank, supra,* 38 Cal.3d at p. 732.)

The judgment is affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.,** Concurring.—I write separately to nail down what I perceive to be clear error: the trial court's failure to state on the record its reasoning process in denying defendant's motion to exclude the prior conviction.

Unlike my colleagues, I find nothing confusing about the California Supreme Court's "signals" regarding what a trial court is required to do when presented with an Evidence Code section 352[1] objection in any context. (Cf. maj. opn., *ante,* p. 553.)

The starting place is *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468],[2] wherein the court held that "on a motion invoking [§ 352] the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value." (*Id.* at p. 25.)

---

[1] Unless otherwise indicated, all further statutory references are to the Evidence Code.
[2] Disapproved on another point in *People* v. *Hall* (1986) 41 Cal.3d 826, 834, footnote 3 [226 Cal.Rptr. 112, 718 P.2d 99].

The most recent pronouncement is by Chief Justice Lucas who, writing for the court in *People* v. *Montiel* (1985) 39 Cal.3d 910 [218 Cal.Rptr. 572, 705 P.2d 1248], repeated the rule without modification or qualification: "We reiterated in *People* v. *Green, supra,* that 'on a motion invoking [§ 352 grounds] the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value . . . . [T]he reason for the rule is to furnish the appellate courts with the record necessary for meaningful review of any ensuing claim of abuse of discretion; an additional reason is to ensure that the ruling on the motion "be the product of a mature and careful reflection on the part of the judge," . . .' (27 Cal.3d at p. 25.)" (*People* v. *Montiel, supra,* at p. 924.)

All California Supreme Court cases falling in between *Green* and *Montiel* state the rule in the same manner. (See, e.g, *People* v. *Frank* (1985) 38 Cal.3d 711, 731-732 [214 Cal.Rptr. 801, 700 P.2d 415]; *People* v. *Holt* (1984) 37 Cal.3d 436, 451-453 [208 Cal.Rptr. 547, 690 P.2d 1207]; *People* v. *Leonard* (1983) 34 Cal.3d 183, 187-189 [193 Cal.Rptr. 171, 666 P.2d 28].) Thus in *Frank,* the high court did not hesitate to find error on a record identical to the one before this court: "Applying *Green* to the case at bar, we observe that during his argument in opposition to the admission of the other-crimes evidence defense counsel invoked section 352 several times. *Although the objection was thus clearly before the court, it failed to make an explicit finding on the record that the probative value of the evidence outweighed the risk of prejudice. Under the rule of Green this was error.*" (*People* v. *Frank, supra,* at p. 732, italics added.)

The rule is both settled and clear: a trial court errs in admitting evidence challenged under section 352 "without making an explicit determination that [the] risk of undue prejudice did not substantially outweigh the probative value of the evidence." (*People* v. *Green, supra,* 27 Cal.3d at p. 26; accord *People* v. *Montiel, supra,* 39 Cal.3d at p. 924; *People* v. *Frank, supra,* 38 Cal.3d at p. 732; *People* v. *Holt, supra,* 37 Cal.3d at pp. 451-453; *People* v. *Leonard, supra,* 34 Cal.3d at pp. 187-189.) Thus making this determination on the record is much more than the "better practice" as my colleagues put it (see maj. opn., *ante,* p. 553), it is the plain, unvarnished law which binds both the trial courts and appellate courts of this state under the doctrine of stare decisis. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

I would therefore follow the lead of the Courts of Appeal in *People* v. *Flanagan* (1986) 185 Cal.App.3d 764, 770 [230 Cal.Rptr. 64], *People* v. *Hoze* (1987) 195 Cal.App.3d 949, 953-954 [214 Cal.Rptr. 14] [petn. for review pending] and hold that the trial court erred in admitting the prior

conviction for impeachment purposes because it failed to articulate *on the record* its reasons for doing so.

However, for the reasons expressed in the majority opinion I agree that the error did not result in a miscarriage of justice, and therefore does not require reversal. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)