[Crim. No. 27101. Second Dist., Div. Five. Apr. 20, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK RAYMOND LOZANO, Defendant and Appellant.

492

COUNSEL

Harvey A. Sniderman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Richard D. Garske, Deputy Attorneys General for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Defendant was convicted by a jury of possession of heroin (Health & Saf. Code, § 11350). No finding was made as to two prior felony convictions. Proceedings were suspended. Defendant was placed on five years' probation on various terms and conditions, including the service of nine months in jail, concurrently with jail time being served in an unrelated matter. Defendant appeals from the judgment (order granting probation).

Defendant challenges the validity of the seizure of the contraband and the sufficiency of the evidence to establish that he was in possession of the contraband.

On March 1, 1974, two plainclothes officers observed defendant driving erratically. Defendant's vehicle stopped in the roadway. Officer Carreon approached it on foot to investigate. He exhibited his badge. Defendant looked at the officer, who recognized him from prior contacts. Defendant pulled his vehicle into a driveway, backed out causing Carreon to jump out of the way, then started forward heading toward Carreon. The officer pulled his revolver and ordered defendant to stop. Defendant did so. Carreon opened the door and removed defendant from the vehicle. Officer Minor, Carreon's partner, passed the open door of defendant's vehicle and observed a yellow balloon lying on the floor. Minor pointed the balloon out to Carreon and then, believing it to contain heroin, Minor removed it from the vehicle.

■ There is no merit to defendant's contention that the officers lacked probable cause to detain him or that they overreached their authority in seizing the balloon. Thus the trial court did not err in denying defendant's motion to suppress. (Pen. Code, § 1538.5.)[1]

■ The challenge to the sufficiency of the evidence arises because the evidence envelope (People's exhibit 1), when opened at the preliminary hearing, contained both the yellow balloon seized from defendant's truck and a portion of a green balloon which neither of the arresting officers accounted for. The evidence with respect to what happened to the yellow balloon from the time the officers seized it until it arrived at the preliminary hearing was as follows: Upon arriving at the police station, Officer Minor punctured the yellow balloon with a paper clip and performed a narcoban test on a small portion of powder contained therein. He obtained a positive result. He did not unravel the balloon, open it, or otherwise examine its contents in any other fashion. Minor placed a piece of scotch tape over the puncture in the balloon and marked the balloon with the letter "M." He then sealed the balloon in a small envelope, sealed the small envelope inside a large manila envelope, and signed his name and the date on the outside of the second envelope. He left the envelope with the police property officer.

The chemist who analyzed the contents of People's Exhibit 1 testified that he found the heroin contained therein inside what he referred to as a green bindle, but what was apparently the piece of green balloon.[2] The

[1]Defendant claims that the trial court erroneously failed to rule on his motion to suppress. The record establishes, however, that the court did rule on the motion, which, pursuant to stipulation, was made during trial.

[2]The witness explained that he referred to any folded material, including rubber, as a bindle.

green material might have been wrapped when he received it. He had no independent recollection of the analysis he conducted on the contents of People's Exhibit 1, but relied on his report made at the time of the analysis. He made no notations regarding the yellow balloon, because there was no powder directly in it and he therefore considered it extraneous. The powder inside the green "bindle" weighed 1 gram. He did not weigh the green material or the yellow balloon. The witness knew from experience that balloons of the type contained in People's Exhibit 1 typically weigh about three-tenths of a gram.

When the chemist received the exhibit from the property clerk, both the manila envelope and the smaller envelope were sealed. After completing his analysis, the chemist placed the remaining powder in a cellophane envelope which he placed in the smaller envelope along with the other items he had originally found in that envelope. He added nothing other than the cellophane envelope to the items which he originally found in the envelope, and removed nothing from it. He sealed the smaller envelope upon completing his analysis, placed it inside the manila envelope along with his report, sealed the manila envelope and returned it to the locked property wagon from which he had first taken it.

The exhibit was brought to the preliminary hearing by Officer Carreon who picked it up in a sealed condition from the police property division. The yellow balloon produced in the courtroom as part of Exhibit 1 had the initial "M" on it, a hole in the bottom portion, and a piece of scotch tape stuck to it. The trial court noted for the record that pieces of yellow balloon and pieces of green balloon appeared to be stuck together.

Carreon testified that he had on occasion seen heroin packaged in two balloons. This procedure, which was used to make buyers think they were getting a greater quantity of heroin than was actually being sold, involved placing the heroin in one balloon, wrapping that balloon up, then wrapping the second balloon around the outer surface of the first one. Minor, who had had special training in the narcotics field, testified that heroin was typically packaged in balloons in two different quantities. A spoon, or $25 balloon, normally contained 1.5 to 2.5 grams of powder; a balloon containing only 1 gram of powder would be a dime bag, costing $10. When the officer seized the yellow balloon from defendant's truck, it was rolled tightly in a circle. Minor estimated the balloon to be a "spoon." He weighed it at the police station and found it weighed 1.8 grams. Minor examined defendant following his arrest and

concluded from the condition of his pupils and from fresh puncture marks on his wrist that defendant was under the influence of an opiate.

Viewing the evidence in the light most favorable to the People (*People v. Reilly*, 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]), and drawing all reasonable inferences in support of the judgment (*People v. Mosher*, 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]), we find that the jury reasonably could have found that the green balloon or bindle was inside the yellow balloon when it was in defendant's possession. Carreon and Minor both testified that a quantity of powder came out of the yellow balloon when Minor punctured it. The chemist testified that the green material might have been wrapped when he received it. Since there was nothing else in the envelope, it could only have been wrapped in the yellow balloon. Carreon testified to the practice of double ballooning. Minor estimated the yellow balloon to be a "spoon." It weighed 1.8 grams at the police station; yet, the powder weighed only 1 gram in the chemist's lab. Balloons typically weigh three-tenths of a gram. If Minor used two-tenths of a gram of powder in performing the narcoban test, the explanation for the difference in the weights becomes obvious.

 It was not incumbent on the People to negate all possibility of tampering or substitution. "The burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration. [¶] The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. [Citations.] Conversely, when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight. [Citations.]" (*People v. Riser*, 47 Cal.2d 566, 580-581 [305 P.2d 1]; see also *Eisentrager v. State*, 79 Nev. 38 [378 P.2d 526, 531].)

 In the present case there is absolutely no evidence of deliberate tampering with the evidence. Minor and the chemist testified to their conduct with respect to the evidence. The fact that the envelopes were properly sealed when the chemist received them, and properly sealed when Carreon picked them up and brought them to court, establishes the integrity of the remaining vital links in the chain of custody. When all

these factors are considered together, the logic of concluding that the green balloon was contained in the yellow one becomes compelling. The evidence was sufficient to support the jury's verdict.

The judgment (order granting probation) is affirmed.

Kaus, P. J., and Stephens, J., concurred.