[No. B017827. Second Dist., Div. Two. May 14, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEE LEWIS, Defendant and Appellant.

COUNSEL

Kenneth M. Stern, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary R. Hahn and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FUKUTO, J.**—James Lee Lewis appeals from the judgment entered following a jury trial that resulted in his conviction of burglary and forcible rape, and his admission of a total of three prior sex-offense and serious-felony enhancements (Pen. Code, §§ 459, 261, subd. (2), 667.6, subd. (a), 667, subd. (a)). He was sentenced to 23 years in prison and contends: (I) that the trial court erred in ruling that he could be impeached with prior convictions of rape and robbery, and failed to weigh the possible prejudicial impact of the convictions against their probative value; (II) that certain items of physical evidence, including blood and semen samples, should have been excluded because of the lack of an adequate foundation regarding chain of custody; (III) that five-year sentence enhancements were improperly imposed under both Penal Code section 667, subdivision (a) and Penal Code section 667.6, subdivision (a) for a single prior conviction of rape; (IV) that appellant may only be sentenced for one of the three enhancements admitted because the underlying felonies were not "brought and tried separately" within the meaning of Penal Code section 667, subdivision (a); and (V) that he admitted the prior serious-felony and prior sex-offense enhancements without sufficient advice regarding the right to a bifurcated jury trial and the consequences of the admissions.

Viewed in the light most favorable to the judgment in accordance with the customary rule governing appellate review (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [137 Cal.Rptr. 781, 562 P.2d 684]), the evidence established that at approximately 3 a.m. on January 17, 1985, Cynthia S. was asleep on the couch of her Long Beach apartment when she awoke to find a strange man standing over her. The man was wearing a watch cap, a dark coat, gloves, and Levi's pants. A bandana covered his face except for his eyes and the bridge of his nose. The man forced Ms. S. to engage in an act of sexual intercourse before she broke free and fled through a window of her apartment.

Anthony Brown heard the commotion caused by Ms. S.'s struggle with her assailant. Through the window of a neighboring apartment, Brown observed a man emerge from a window of Ms. S.'s apartment, and run past him at a distance of approximately 25 feet. He recognized the man as appellant, whom he did not know by name. Brown had seen appellant in the neighborhood on many occasions and knew his brother, Robert.

Body fluid samples were obtained from the victim's person and clothing immediately following the attack. Semen was detected in the victim's vaginal smears and on the slip she was wearing at the time of the rape. Analysis of

the vaginal smears was inconclusive because antigenic activity consistent with either the victim or appellant was detected. However, the stain on the slip exhibited an antigenic profile shared by only 7.2 percent of the male population of Los Angeles County, including appellant, and not shared by Ms. S.[1]

During a search of appellant's two residences on February 12, 1985, the police found a blue jacket and a watch cap, which the victim identified as similar to the garments worn by her assailant. A pair of gloves was also found in one of the residences. Appellant presented an alibi defense, but did not testify.

Prior to trial, the court noted that there were several prior convictions charged as enhancements, and inquired of defense counsel, "What is your pleasure with reference to the priors?" Defense counsel requested "a ruling as to the use of said priors [for impeachment] if the defendant takes the stand. . . ." The deputy district attorney asserted that appellant's prior convictions of rape, residential burglary and robbery "would all be usable for purposes of impeachment. . . ." Invited by the court to respond, defense

---

[1] Appellant objected to the admission of this physical evidence on the ground that a sufficient foundation had not been established with respect to the chain of custody. The evidence established, in relevant part, that Dr. Burton Sanders had examined Ms. S. at Pacific Hospital on January 17, 1985, and had obtained specimens, including vaginal swabs and washings. Dr. Sanders also examined the victim's slip and observed a stain which appeared to be blood or other secretions. The doctor could not recall how he obtained possession of the slip. However, he surmised that he had asked the victim whether it belonged to her, as was his usual custom. Dr. Sanders gave the specimens and the slip to Long Beach Police Officer Gage and another officer. Officer Gage placed the slip in an evidence envelope (People's exhibit 5) which he stored in the police department evidence locker. He also delivered the specimens to the evidence locker. When introduced as exhibits at trial, the specimens (People's exhibits 6, 7, 8) were contained in a bag (People's exhibit 9), identified by the names of Dr. Sanders and Ms. S., and a serial number. Officer Gage could not recall with certainty whether, when he received the specimens, they were already packaged in that particular bag, although he indicated that People's exhibit 9 was the type of bag normally used by the hospital to package "rape kit" specimens. The bag introduced as People's exhibit 9 bore a serial number, however, which corresponded to the number which Officer Gage had used to identify the "rape kit" specimens in the evidence property report prepared for the case.

Long Beach Police Officer Olivia Burbank was present at Pacific Hospital on February 20, 1985, when blood and saliva samples were taken from the victim. She was also present at Pacific Hospital on August 15, 1985, when samples of appellant's blood and saliva were taken. Officer Burbank transported the samples to the Los Angeles County Sheriff's crime lab on the dates that they were each collected. All blood and saliva samples were delivered in sealed envelopes bearing serial numbers (People's exhibits 11, 12, 13 and 14). Officer Burbank was given receipts for each sample bearing corresponding serial numbers. Officer Burbank also retrieved from the Long Beach Police Department evidence freezer an envelope (exhibit 5) and a bag (exhibit 9) bearing the names of the victim and Dr. Sanders. She delivered these items to the crime lab in a sealed condition. Sam Le, the criminalist for the crime lab who analyzed the blood and saliva samples and the victim's specimens and slip, received these items in sealed packages (exhibits 5, 9, 11, 12, 13, 14).

counsel inquired, "Do they qualify as far as moral turpitude is concerned, Your Honor?" The court opined that appellant's prior convictions of forcible rape, residential burglary and robbery were crimes of moral turpitude but that a prior conviction of felonious assault was not. The deputy district attorney reiterated his agreement with the court's assessment and the court thereupon ruled that it would "permit impeachment using the forcible rape, residential burglary and robbery priors."[2]

Thereafter, defense counsel conferred briefly with his client, off the record, then indicated that appellant intended to admit the prior conviction enhancements. Appellant was advised of, and personally waived, his rights to jury or court trial, to confrontation and cross-examination, and against self-incrimination, with respect to the prior conviction allegations, and was advised that for each of three prior offenses to be admitted, an additional five-year sentence could be imposed. He admitted the enhancements, as follows:

"MR. KLINK: So, then, sir, with regard to the allegation that you suffered a prior conviction for forcible rape within the meaning of Penal Code section 667.7(a)—do you admit that, sir? [¶] THE DEFENDANT: Yes, sir. [¶] MR. KLINK: And to the further allegation that you suffered the prior convictions for violation of Section 261.2 of the Penal Code; that is, forcible rape, and residential burglary, in violation of Section 459 of the Penal Code within the meaning of Penal Code Section 667(a)—do you admit that prior, sir? [¶] THE DEFENDANT: Yes, sir. [¶] MR. KLINK: And the further allegation that you suffered a conviction for the crime of robbery, that being a serious felony within the meaning of Penal Code Section 667(a)—do you admit that prior, sir? [¶] THE DEFENDANT: Yes, sir. [¶] MR. KLINK: Does counsel join in the waivers and concur in the admission? [¶] MR. STANLEY: Counsel joins and concurs. [¶] MR. KLINK: Stipulate there is a factual basis? [¶] MR. STANLEY: So stipulate. [¶] THE COURT: All right. Is it also true that these priors were suffered in May of 1983? [¶]THE DEFENDANT: Yes, sir. [¶]THE COURT: About that time? [¶]THE DEFENDANT: Yes, sir."[3]

At the sentencing hearing, the court imposed a total of 15 years additional imprisonment for the admitted enhancements, explaining, as follows: "The defendant has suffered and has admitted three prior felony convictions, two

---

[2]Prior to the commencement of the evidentiary portion of the trial, it was determined from superior court records that appellant had not, in fact, previously been convicted of the crime of burglary. We presume that appellant thereafter understood that he could be impeached with his rape and robbery convictions only.

[3]Appellant's admission of the nonexistent prior burglary conviction was subsequently stricken when the error was brought to the court's attention.

of which, the rape convictions, fall within 667.6 of the Penal Code; the robbery is a serious felony falling within Section 667(a) of the Penal Code; and each one carries with it a five-year consecutive sentence; therefore the court imposes three consecutive five-year sentences to the eight years that is imposed for count I in this case. It makes the total sentence 23 years."[4]

## I.

Appellant contends that his conviction must be reversed because, in ruling that his prior convictions were admissible for purposes of impeachment, the trial court failed to balance the possible prejudicial impact of the convictions against their probative value under Evidence Code section 352. He does not contend, nor could he reasonably do so, that the trial court erred as a matter of law in ruling that his rape and robbery convictions necessarily evidenced his " 'readiness to do evil.' " (*People* v. *Castro* (1985) 38 Cal.3d 301, 314 [211 Cal.Rptr. 719, 696 P.2d 111].) Rape by force and robbery are both crimes which necessarily involve moral turpitude. (*People* v. *Collins* (1986) 42 Cal.3d 378, 397 [228 Cal.Rptr. 899, 722 P.2d 173].) Rather, he asserts that because the record does not affirmatively demonstrate that the trial court considered such factors as whether the prior convictions were too remote, or substantially similar to the charged crimes, there was a failure to properly exercise discretion in ruling on admissibility. The contention is meritless.

In *People* v. *Castro, supra,* 38 Cal.3d 301, the Supreme Court held that article I, section 28, subdivision (f) of the Constitution (hereinafter section 28(f)),[5] adopted as part of Proposition 8 in the June 1982 Primary Election, authorizes the impeachment of a witness in a criminal trial by a prior felony that necessarily involves moral turpitude, but does not deprive the trial court of discretion under Evidence Code section 352[6] to exclude

---

[4]Penal Code section 667, subdivision (a) generally mandates a consecutive five-year sentence enhancement for "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony. . . ." Penal Code section 1192.7 includes "rape" and "robbery" among those offenses designated "serious felonies" for the purposes of enhancement under Penal Code section 667, subdivision (a). Penal Code section 667.6, subdivision (a) generally mandates a consecutive five-year sentence enhancement for any person "who is found guilty of violating subdivision (2) or (3) of [Penal Code] Section 261" who has previously been convicted of that offense or other designated violent sex offense.

[5]Section 28, subdivision (f) provides: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

[6]Section 352 reads: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

any such conviction when its probative value is outweighed by the risk of undue prejudice. (*Id.* at p. 313.) *People* v. *Collins, supra,* 42 Cal.3d 378, subsequently set forth procedures for applying the *Castro* rule to cases tried before the date of that decision and still pending on appeal. (*Id.* at p. 381.) Appellant's trial commenced after the *Castro* decision. Thus, on its face, the *Collins* decision has no application to this case.

■ Appellant nevertheless suggests that this court is bound to follow the procedure set forth in *Collins* for cases in which the defendant did not testify after the denial of a motion to exclude prior convictions for impeachment purposes. In other words, it is asserted that the judgment must be reversed and the matter remanded to the trial court with directions to exercise discretion under Evidence Code section 352 *on the record.* This approach was recently employed in *People* v. *Flanagan* (1986) 185 Cal.App.3d 764 [230 Cal.Rptr. 64], in which the Court of Appeal, Fifth District, concluded that even in a post-*Castro* case, when the record "fails to disclose that the trial judge engaged in the requisite weighing process, . . . essentially the same situation addressed in *People* v. *Collins, supra,* i.e., failure of the court to exercise discretion [is presented]." (*Id.* at p. 773.) We do not agree with this conclusion.

In *People* v. *Collins,* the Supreme Court expressly presumed that, in all cases in which prior convictions were ruled admissible for purposes of impeachment after the passage of Proposition 8, but before the date of *Castro,* the trial court "deemed itself bound by the 'impeachment without limitation' language of section 28(f)," and held that "[t]hat presumption will be dispelled only if the trial court made a clear statement on the record that it was denying the motion in the exercise of its discretion." (*People* v. *Collins, supra,* 42 Cal.3d at p. 390, fn. 9.) A contrary presumption applies in this case. The motion to exclude was denied *after* the Supreme Court's ruling in *Castro* that section 28(f) did not abolish trial court discretion with respect to felony impeachment. The trial court's awareness of the *Castro* decision is demonstrated by the record. ■ "It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People* v. *Mack* (1986) 178 Cal.App.3d 1026, 1032 [224 Cal.Rptr. 208]; Evid. Code, § 664.)

■ Appellant requested findings on whether the prior convictions involved "moral turpitude" and a "ruling as to the use of said priors if the defendant takes the stand," but nothing more. It was never asserted as grounds for exclusion that the prior rape and robbery convictions were too remote, or too similar to the charged offenses, or that impeachment with

more than one prior felony was, ipso facto, an abuse of discretion. In view of appellant's limited request for a "ruling," the trial court's on-the-record statement that the rapes, the burglary and the robbery, but not the aggravated assault, involved moral turpitude, sufficiently demonstrates that the decision to permit impeachment was the result of a weighing process. (Cf. *People* v. *Holt* (1984) 37 Cal.3d 436, 453 [208 Cal.Rptr. 547, 690 P.2d 1207].)[7]

■ Equally without merit is the related contention, that even if judicial discretion was exercised under Evidence Code section 352, the trial court abused its discretion in ruling that any of the prior convictions could be used for purposes of impeachment.[8] In 1983, appellant was convicted and sentenced for two rapes committed in 1977, and a robbery committed in 1981. The present offenses were committed in 1985. None of the prior offenses were so remote as to diminish their probative value. (See, e.g., *People* v. *McFarland* (1980) 108 Cal.App.3d 211, 213 [166 Cal.Rptr. 429].)

Nor was it error as a matter of law to permit impeachment with more than one prior felony conviction. (See, e.g., *People* v. *Campbell* (1978) 87 Cal.App.3d 678, 687 [151 Cal.Rptr. 175].) ■ A series of crimes evidencing moral turpitude is more probative of a defendant's willingness to give perjured testimony than a single such offense. (*People* v. *Holt, supra,* 37 Cal.3d at p. 452.)

■ Appellant's robbery conviction would have been admissible even before the adoption of section 28(f) because it is sufficiently dissimilar to the charged offenses of burglary and rape, and necessarily involves larceny, a crime evidencing dishonesty. (*People* v. *Collins, supra,* 42 Cal.3d at pp. 390, fn. 10, 395.) The robbery conviction was therefore "ipso facto admissible under the broader standard of *Castro*." (*Ibid.*)

While the use of the prior rape convictions for impeachment would have constituted an abuse of discretion under pre-Proposition 8 rules of exclusion

---

[7]In any event, "[i]t is, of course, the law 'that questions relating to the admissibility of evidence will not be reviewed on appeal absent a specific and timely objection in the trial court on the ground sought to be urged on appeal. [Citation.]" (*People* v. *Lescallett* (1981) 123 Cal.App.3d 487, 493-494 [176 Cal.Rptr. 687]; see also *People* v. *Holt, supra,* 37 Cal.3d at p. 453, fn. 8.)

[8]Appellant asserts, inter alia, that the trial court abused its discretion in ruling his prior burglary conviction admissible for purposes of impeachment. We need not reach this contention. At the time of these proceedings, appellant had never previously been convicted of the crime of burglary. He was disabused of any possible misunderstanding in this regard when his attorney successfully moved to have his admission of a prior burglary conviction stricken based on the failure of superior court records to establish the fact of such a conviction. Appellant's decision not to testify was accordingly not the product of the court's earlier ruling that impeachment would be permitted with the nonexistent burglary conviction.

because appellant was also charged with rape in the present proceedings (see, e.g., *People* v. *Rist* (1976) 16 Cal.3d 211, 220 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Fries* (1979) 24 Cal.3d 222, 230 [155 Cal.Rptr. 194, 594 P.2d 19]), no longer is the admission of same or similar prior offenses error as a matter of law. (*People* v. *Castro* , *supra,* 38 Cal.3d at pp. 308-309.) Section 28(f) was enacted to counter the effect of controversial decisions like *Rist, supra,* and *Fries, supra,* which had imposed rigid limitations upon the discretion of the trial court to permit impeachment with prior felony convictions. (*Ibid.*; see also *People* v. *Navarez* (1985) 169 Cal.App.3d 936, 950 [215 Cal.Rptr. 519]; *People* v. *Williams* (1985) 169 Cal.App.3d 951, 956-957 [215 Cal.Rptr. 612].) We are satisfied that it was not an abuse of discretion to permit impeachment with the two prior rape convictions in the event appellant elected to testify.

## II.

■ Appellant contends that certain exhibits were improperly admitted because an unbroken chain of custody was not established. In particular, he asserts that the victim's slip, and results of tests performed thereon, should not have been received because the physician who examined the victim at Pacific Hospital was unable to recall where he obtained the slip; that the blood and saliva samples of appellant and the victim should not have been received because evidence was lacking with respect to how the samples got from Officer Burbank, who delivered the samples to the crime lab, to Mr. Le, who analyzed these items; and, that the specimens taken from the victim following the rape should not have been received because Officer Gage "could only speculate" that he picked up the evidence at the hospital and placed it in the evidence locker. Each of these contentions is meritless.

The burden on the People was "to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration." (*People* v. *Riser* (1956) 47 Cal.2d 566, 580 [305 P.2d 1].) The victim identified the slip that she was wearing the night of the rape, and testified that the slip was not stained prior to the attack. Dr. Sanders testified that he examined the victim and a slip with a stain that appeared to be blood or other secretions, and delivered the slip, as well as the victim's specimens to Officer Gage. Officer Gage testified that he received a slip and a package containing specimens from the doctor, and personally delivered the items to the crime lab in sealed packages identified by serial numbers. Officer Burbank testified that she personally observed the taking of blood and saliva samples from the victim and appellant. She delivered these items to the crime lab in sealed packages, identified by serial numbers.

When the criminalist received the exhibits for analysis, they were still in a sealed condition. All vital links in the chain of custody were sufficiently established. (See *County of Sonoma* v. *Grant W.* (1986) 187 Cal.App.3d 1439, 1449 [232 Cal.Rptr. 471]; *People* v. *Lozano* (1976) 57 Cal.App.3d 490, 495 [127 Cal.Rptr. 204].)

Moreover, "[i]t was not incumbent on the People to negate all possibility of tampering or substitution." (*People* v. *Lozano, supra,* 57 Cal.App.3d at p. 495.) Dr. Sanders's failure to recall how he obtained possession of the slip, Officer Gage's failure to recall how the victim's specimens were packaged and labeled when he picked them up from the hospital, and the failure to establish precisely how the sealed exhibits got from the crime lab to the criminalist who worked there, do not constitute gaps in the chain of custody which make it more likely that " 'the evidence analyzed was not the evidence originally received.' " (Ibid.) Appellant having raised the barest speculation that there was tampering with, or substitution of the original exhibits, it was proper for the trial court " 'to admit the evidence and let what doubt remain[ed] go to its weight. [Citations.]' " (*Ibid.*)

## III.

■ Appellant contends that the prohibition against multiple punishment (Pen. Code, § 654) was violated because two 5-year enhancements were imposed for a single rape "offense." The records of the Los Angeles County Superior Court, in case number A018476, disclose that on April 3, 1983, appellant was convicted by guilty pleas of two counts of forcible rape, in violation of Penal Code section 261, subdivision 2, for offenses against different victims. Appellant admitted one enhancement for each of these prior rape offenses. Accordingly, imposition of a five-year enhancement for each prior rape conviction did not violate Penal Code section 654. (Cf. *People* v. *Tassell* (1984) 36 Cal.3d 77, 91-92 [201 Cal.Rptr. 567, 679 P.2d 1].)

## IV.

■ Appellant further contends that the imposition of more than one 5-year enhancement was improper because the three offenses charged as enhancements were not "brought and tried separately" within the meaning of Penal Code section 667, subdivision (a). According to Los Angeles County Superior Court records, appellant was charged by felony information (case No. A018476) with three counts of burglary, two counts of forcible rape, and one count of assault with the intent to commit rape (Pen. Code, §§ 459, 261,

subds. (2) and (3), 220). These offenses allegedly occurred in August and December of 1977. Appellant was found incompetent to stand trial and was committed to Patton State Hospital. (Pen. Code, § 1368 et seq.) He left the state hospital without permission on November 10, 1979, and was apprehended by Long Beach police officers on August 10, 1981. A felony information was filed on September 8, 1981, charging appellant with the crimes of robbery and felonious assault, committed on August 10, 1981 (case No. A023697). Appellant was once again found incompetent to stand trial, and was recommitted to the state hospital in both cases (A018476 and A023697). Criminal proceedings were resumed in both cases on January 17, 1983. On August 1, 1983, pursuant to a plea bargain, appellant plead guilty in case number A018476 to two counts of forcible rape, and in case number A023697, to one count of robbery. The remaining counts of both informations were dismissed and appellant received concurrent five-year sentences for each offense. Although the sentencing proceedings in both cases were held contemporaneously, the cases were never consolidated.

Appellant is correct to the extent he asserts that he was not convicted of the two prior rapes "on charges brought and tried separately." (Pen. Code, § 667, subd. (a).) The two rapes were alleged as counts of a single accusatory pleading. Imposition of a five-year prior serious felony enhancement (Pen. Code, § 667, subd. (a)) for one of the prior rape convictions would not have been proper. (*People* v. *Martinez* (1985) 175 Cal.App.3d 881, 895 [221 Cal.Rptr. 258]; *People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 118 [212 Cal.Rptr. 888].) That is not what occurred here, however.

Appellant admitted prior convictions of "forcible rape within the meaning of Penal Code section 667.7 [*sic*]" and "for violation of Section 261.2 [*sic*] of the Penal Code; that is, forcible rape, . . . within the meaning of Penal Code section 667(a), . . ."[9] At the sentencing hearing, however, the trial court observed that the two prior rape offenses "weren't separate offenses," but "[fell] within 667.6 of the Penal Code." Without objection by appellant, the court imposed consecutive five-year terms for both of the rape convictions under subdivision (a) of section 667.6, rather than subdivision (a) of section 667.

Imposition of two section 667.6 violent sex-offense enhancements was proper. Appellant was convicted in these proceedings of a violation of Penal Code section 261, subdivision (2), rape "accomplished against a person's will

---

[9]The information charged appellant with having suffered prior convictions of "FORCIBLE RAPE (Two Counts) in violation of Section 261(2), of the Penal Code . . . within the meaning of Penal Code Section 667.6(a)" and "FORCIBLE RAPE; . . ., in violation of Section 261(2) . . . of the Penal Code, . . . within the meaning of Penal Code Section 667(a)."

by means of force or fear of immediate and unlawful bodily injury. . . ." (Pen. Code, § 261, subd. (2).) For such persons, Penal Code section 667.6, subdivision (a) authorizes five-year enhancements for each prior conviction of the same offense, *without* requiring that such convictions be based upon charges separately brought and tried. (*People* v. *Baker* (1985) 169 Cal.App.3d 58, 62 [215 Cal.Rptr. 293].)

No different result obtains merely because appellant was initially charged with, and admitted one of the prior rape convictions "within the meaning of Penal Code section 667 (a)." Appellant was aware that admitting two prior rape convictions would expose him to an additional ten years in prison, and expressly admitted that he had suffered two prior convictions of *forcible rape,* a violation of Penal Code section 261, subdivision (2). He is bound by that admission, which sufficiently established all necessary elements for enhancement under Penal Code section 667.6, subdivision (a). (Cf. *People* v. *Arwood* (1985) 165 Cal.App.3d 167, 176 [211 Cal.Rptr. 307]; *People* v. *Cory* (1984) 157 Cal.App.3d 1094, 1101-1104 [204 Cal.Rptr. 117]; cf.: *People* v. *Hickey* (1980) 109 Cal.App.3d 426, 432 [167 Cal.Rptr. 256].)

Equally without merit is the contention that the prior robbery conviction was not subject to enhancement under Penal Code section 667, subdivision (a) because appellant was sentenced contemporaneously, and served concurrent sentences for that offense, together with the two prior rape convictions. The robbery occurred nearly four years after the rape and became the subject of the same plea bargain only because appellant committed additional crimes while an escapee from the state hospital, requiring the filing of a new information. The "separately brought and tried" limitation of section 667, subdivision (a) does not bar multiple enhancements where convictions are based upon unrelated counts of different accusatory pleadings. (Cf. 2 Witkin, Cal. Crimes (1963) § 1008, p. 956; *People* v. *Martinez, supra,* 175 Cal.App.3d at p. 895.) The trial court did not err in imposing a total of 15 years additional imprisonment for the 3 enhancements.

V.

Appellant also attacks the constitutional validity of his admissions of three prior felony convictions. He maintains that he admitted the enhancements without sufficient advice concerning the consequences of his admissions in future criminal proceedings. Such advice is not required. (*Hartman* v. *Municipal Court* (1973) 35 Cal.App.3d 891, 893 [111 Cal.Rptr. 126].) He further contends that his waiver of a jury trial on the prior conviction allegations was defective because he was not advised of the right to a bifurcated trial prior to the admissions. This contention is unavailing. Apart

from whether *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191] requires advice of the right to bifurcated proceedings when the accused indicates his intention to admit all prior conviction enhancements, appellant has failed to establish that he was prejudiced. As the record affords no basis for concluding that appellant would not have admitted the prior conviction enhancements had he been advised of the right to a bifurcated jury trial, reversal of the enhancements is not required. (*In re Ronald E.* (1977) 19 Cal.3d 315, 325-326 [137 Cal.Rptr. 781, 562 P.2d 684].)

The judgment is affirmed.

Compton, Acting P. J., and Gates, J., concurred.

A petition for a rehearing was denied June 5, 1987, and appellant's petition for review by the Supreme Court was denied August 13, 1987.