Filed 1/12/16  P. v. Williams CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES WILLIAMS,<br><br>    Defendant and Appellant. | B261844<br><br>(Los Angeles County<br>Super. Ct. No. BA426957) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Lance E. Winters, Senior Assistant Attorney General; Steven D. Matthews, Supervising Deputy Attorney General; and David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

_____

Charles Williams was charged with the attempted burglary of a marijuana dispensary. During trial, the prosecution sought to admit a surveillance video that showed Williams with a drill saw near a security door covering the dispensary entrance. Williams objected to the video, asserting the prosecution had failed to authenticate the evidence and failed to establish chain of custody. The court overruled the objections and Williams was found guilty. On appeal, Williams argues the court abused its discretion in admitting the video. We affirm.

## FACTUAL BACKGROUND

### A.    *Summary of Events Preceding the Filing of the Information*

On July 8, 2014, at approximately 4:30 a.m., Los Angeles Police Department (LAPD) officer Jose Anzora and his partner responded to a report of a possible burglary in progress at the "Main Spot Collective" (the Main Spot), a medical marijuana dispensary located in south Los Angeles. When Anzora arrived at the dispensary, he saw defendant Charles Williams and Clinzell Washington standing next to each other in front of the store. Washington was wearing a blue jumpsuit, black gloves and a dark colored hat; Williams was wearing a brown or burgundy tee shirt and a light colored hat. As Anzora and his partner approached, Williams and Washington began walking away from the dispensary, in opposite directions. The officers detained the suspects and placed them in handcuffs. Shortly thereafter, LAPD officers Daniel Hayashi and his partner arrived to aid in the investigation and transport the suspects to booking.

While inspecting the premises, officer Hayashi noticed that a lock on the bottom of the dispensary's roll-up security door had been cut. Hayashi conducted a search of a white truck parked in front of the dispensary, where he found a drill saw, several grinder wheels, two crowbars and a backpack.

### B.  *Information and Trial*

On August 6, 2014, the district attorney of the County of Los Angeles filed a two-count information against Williams alleging attempted burglary (Pen. Code, §§ 459 &

2

664[1]) and possession of burglary tools (§ 667.6, subd. (a).) The information further alleged Williams had nine prior convictions within the meaning of section 667.5, subdivision (b).

Prior to trial, the prosecution informed the court it intended to play the jury a 23 minute surveillance video that had recorded the area in front of the dispensary on the night in question. Williams objected, arguing the prosecution should not be permitted to show the video until it authenticated the evidence and established chain of custody. In response, the prosecution stated that officers Anzora and Hayashi both appeared at the end of the video, and would "lay [a] foundation" by "identifying themselves [and Williams], who they detained on [the] scene." The court overruled the objection, explaining that it would allow the video based on the prosecution's "representation that the necessary witnesses will be here."

### 1. Testimony of Jose Anzora

During the testimony of officer Anzora, the prosecution informed the court it intended to show Anzora a two-minute segment of the surveillance video that depicted the events that occurred after he had arrived at the dispensary. Williams objected, arguing that the prosecution had still not authenticated or established chain of custody over the video. During a sidebar conference, the prosecution explained that Anzora would confirm the video accurately portrayed the events that had occurred while he was at the dispensary. The court permitted the segment of the video to be shown, explaining that Anzora's testimony would be sufficient to provide a foundation, and that the "[t]he rest goes to weight."

The prosecution then played the surveillance video, beginning at time stamp 4:31 a.m. The video showed a white truck parked in front of the Main Spot. Anzora testified he had seen the same vehicle parked in the same spot when he arrived at the dispensary. Anzora also testified that the video's time stamp, which showed him arriving at the dispensary at approximately 4:32 a.m., accurately reflected his arrival time. He also

---

[1] Unless otherwise noted, all further statutory citations are to the Penal Code.

3

testified that the video accurately portrayed his detention of Williams, and the subsequent arrival of officer Hayashi and Hayashi's partner.

### 2. Testimony of Daniel Hayashi

During the testimony of officer Hayashi, the prosecution informed the court it intended to play the entire surveillance video, which ran from approximately 4:10 a.m. to 4:33 a.m. The prosecution explained that Hayashi's testimony would provide a proper foundation for the evidence "based on the fact he appears on the video." The prosecution also explained that Hayashi had previously watched the video and would testify that the clothing Williams and Washington were seen wearing matched the clothing they were wearing when Hayashi had arrived on scene. The prosecution also informed the court that although the Main Spot employee who had provided the video no longer worked at the dispensary, it intended to call a current employee who was "familiar with the surveillance system and how it records." The court permitted the video to be shown based on the prosecution's "offer of proof."

Officer Hayashi testified that he had watched the entire video and did not notice any breaks or jumps in the recording. Hayashi confirmed the video accurately portrayed what had occurred during and after his arrival at the dispensary. Hayashi also stated he was not the individual who had retrieved the video from the dispensary, explaining that a detective had obtained the video during a "follow-up" investigation.

The prosecution played the video to the jury, which showed a white truck pull up to the Main Spot. Two individuals exited the vehicle. One of the individuals crouched toward the bottom of a security door that covered an entrance to the dispensary. While the individual was crouched near the security door, sparks began emanating upward toward the surveillance camera. Later in the video, the same individual was seen holding a drill saw. The second individual who had exited the white truck was shown standing in front of the dispensary wearing a backpack and holding a crowbar. Toward the end of the video, officers Anzora and his partners were seen arriving at the dispensary and

4

detaining the suspects. Hayashi and his partner were shown arriving shortly after the detention.

Hayashi testified that when he and his partner arrived on scene, the white truck depicted in the video was parked in front of the dispensary. Hayashi also testified that based on his contact with Williams and Washington on the night of the events in question, he believed they were the two suspects shown in the video. Hayashi explained that the clothes and hats Williams and Washington were wearing in the video matched the items they were wearing when Hayashi arrived on scene. Hayashi identified Williams as the individual crouched near the bottom of the security door. He testified that the drill Williams was seen holding later in the video was the same type of drill Hayashi had recovered from the white truck. Hayashi identified Washington as the second individual on the video, testifying that that the backpack and crowbar Washington was seen holding matched other items Hayashi had recovered from the vehicle.

### 3. Testimony of Levon Azhanvuryan

The prosecution also called Levon Azhanvuryan, the manager of the Main Spot. Azhanvuryan testified that the roll-up security door covering the front entrance of the dispensary remained permanently locked because the dispensary's customers entered the store through the rear of the building. Azhanvuryan also explained that the security door had two sets of locks, only one of which was accessible from the exterior of the store. Azhanvuryan stated that when he last checked the front of the store, which had occurred sometime in June, the exterior lock to the security door was not cut.

Azhanvuryan also testified that the Main Spot had a security camera which provided a live recording of the area located in front of the security door. Azhanvuryan explained that the camera's images were recorded onto a digital video recording device (DVR) located inside the store, which was accessible to the Main Spot's employees.

5

### 4. Renewed objections to the surveillance video

After the prosecution had presented its evidence, Williams reasserted his objection to the surveillance video based on "lack[ of] foundation" and failure to "establish[] . . . chain of custody . . . all the way through." The court overruled the objections, explaining that it had watched the video and did not see any "kind of break in the action where it would have been spliced or anything would have been left out. It appeared to be . . . continuous." The court further explained that the images in the video and the testimony of the prosecution's witnesses were sufficient to satisfy chain of custody.

### 5. Verdict and sentencing

The jury found Williams guilty of attempted burglary (count one) and possession of burglary tools (count two). At sentencing, Williams admitted each of the nine prior conviction allegations, five of which the trial court struck. The court sentenced Williams to 66 months in prison on count one, which included an upper term sentence of 18 months plus a four year enhancement for the four prior convictions. The court elected to suspend the last 30 months of Williams's sentence, during which time he was to remain under the supervision of the probation department. The court imposed a six month sentence on count two, which the court then stayed under section 654.

## DISCUSSION

### A. The Trial Court Did Not Abuse its Discretion in Admitting the Surveillance Video

Williams argues the trial court should have excluded the surveillance video because the prosecution failed to authenticate the evidence and failed to establish chain of custody. We review the court's determination of authenticity and chain of custody for abuse of discretion. (See *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*) [trial court's determination that the prosecution "provide[d] the foundational testimony necessary to authenticate [evidence]" is reviewed for abuse of discretion]; *People v. Hall* (2010) 187 Cal.App.4th 282, 294 (*Hall*) ["We review a trial court's exercise of discretion in admitting evidence over a chain of custody objection for abuse of discretion"].) Under

6

this standard, "we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Goldsmith, supra,* 59 Cal.4th at p. 266.)

### 1. *The trial court did not abuse its discretion in determining that the prosecution authenticated the video*

Williams argues the trial court abused its discretion in concluding that the prosecution provided sufficient evidence to authenticate the video. "To be admissible in evidence, an audio or video recording must be authenticated. [Citations.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 747 [disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2].) The prosecution must provide evidence that would permit a reasonable trier of fact to find the "video . . . is a fair and accurate representation of the scene depicted. [Citation.]" (*Goldsmith, supra*, 59 Cal.4th at p. 266.) "This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. [Citations.] It may [also] be supplied by other witness testimony, circumstantial evidence, content and location." (*Goldsmith, supra*, 59 Cal.4th at p. 266; *People v. Marshall* (1996) 13 Cal.4th 799, 832; *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1432; § 1400.)

At trial, officers Anzora and Hayashi both testified that the video accurately portrayed what occurred during and after their arrival at the dispensary. Officer Hayashi also testified that the clothing Williams and Washington were wearing throughout the video matched the clothing they were wearing when he arrived at the scene. He further testified that the tools Williams and Washington were seen holding in the video matched items that Hayashi had found in the front seat of a white truck parked in front of the dispensary.

Williams does not dispute that this testimony was sufficient to authenticate the portion of the video depicting what occurred after officers Anzora and Hayashi arrived on scene. (*People v. Bowley* (1963) 59 Cal.2d 855, 859 ["It is well settled that the testimony

7

of a person who was present at the time a film was made that it accurately depicts what it purports to show is a legally sufficient foundation for its admission into evidence"].) Williams argues, however, that the evidence was insufficient to support a finding that the remainder of the video, which purportedly showed the events that occurred immediately before the officers arrived, was accurate.

In *People v. Chism* (2014) 58 Cal.4th 1266 (*Chism*), our Supreme Court concluded that analogous testimony was sufficient to authenticate a surveillance video depicting events that had occurred inside of a liquor store shortly before the arrival of responding officers. A police officer, Stacey Holdredge, testified that she responded to a report of a possible burglary in progress at the liquor store. When Holdredge arrived, she found a victim lying on the floor with a gunshot wound. Police retrieved a surveillance video that showed the defendant walking into the store shortly before Holdredge had arrived. At trial, the prosecution introduced still photographs of the defendant that were produced from the images on the surveillance video. To authenticate the evidence, "officer Holdredge testified that she arrived at [the liquor store] within minutes after the shooting, that she viewed the surveillance videotape police obtained at the crime scene, and that it accurately portrayed what occurred when she [and other officers] were inside the store." (*Chism, supra*, 58 Cal.4th at p. 1302.) A second officer provided testimony regarding the process that had been used to print the still photographs from the surveillance video. On appeal, the defendant argued the prosecution had failed to authenticate the photographs.

The Court rejected the argument, explaining: "Holdredge testified [the video] . . . accurately depicted her conduct and that of [other officers] inside the store immediately after the shooting. Thus, the videotape was shown to be an accurate representation of what it purported to be, a recording of the events that occurred inside [the liquor store] at or near the time of the shooting." (*Chism, supra*, 58 Cal.4th at p. 1304.) The Court further explained that the second officer's testimony established the still photographs depicted "the images stored in the videotape that Officer Holdredge authenticated." (*Ibid*.)

8

As in *Chism*, officers Anzora and Hayashi each testified that the Main Spot's surveillance video accurately portrayed what had occurred after they arrived at the dispensary, thereby raising a reasonable inference that the video accurately represented what had occurred during the period preceding their arrival. The prosecution also provided additional authenticating evidence that was unavailable in *Chism*, which included Hayashi's testimony that the clothes Williams and Washington were wearing when the officers arrived at the dispensary matched the clothing they were wearing in the video. Hayashi further testified that the tools the suspects were seen holding in the video matched items that Hayashi found during a search of a vehicle parked in front of the dispensary. In light of such testimony, the trial court did not abuse its discretion in concluding that the prosecution made a sufficient evidentiary showing that the video was "a fair and accurate representation of the scene depicted. [Citation.]" (*Goldsmith, supra*, 59 Cal.4th at p. 267.)

### 2. *The trial court did not abuse its discretion in overruling Williams's chain of custody objection*

Williams also argues the trial court should have excluded the video based on the prosecution's failure to establish chain of custody. "In a chain of custody claim, "'[t]he burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration. [¶] The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. [Citations.] Conversely, when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight." [Citations.]' [Citations.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 134 (*Catlin*).) "While a perfect chain of custody is desirable, gaps will not result in the exclusion of the evidence, so long as the links offered connect the evidence with the

case and raise no serious questions of tampering." (Méndez, Cal. Evidence (1993) § 13.05, p. 237 [language quoted and cited with approval in *Catlin, supra,* 26 Cal.4th at p. 134].)

Williams asserts the video should have been excluded from trial because the prosecution provided no evidence explaining how the video was obtained from the Main Spot, or what happened to the video while it was in the possession of the police. The trial transcript confirms that the prosecution did not provide any testimony from the law enforcement officer who obtained the video from the Main Spot, nor did they call any witness to explain how the police maintained control over the video. Instead, the prosecution relied solely on the Main Spot manager's testimony that the dispensary's surveillance system recorded live images of the area depicted in the video, and officer Hayashi's testimony that the video was obtained by an unnamed "detective" during a "follow-up" investigation into the crimes at issue.

Although the prosecution's effort to establish chain of custody was far from perfect, we nonetheless conclude the trial court did not abuse its discretion in admitting the video. Several factors support our decision. First, unlike DNA or other types of evidence that must be gathered and tested to determine their relevance, the continuous time-stamped video at issue here could not be easily corrupted or manipulated. (*Catlin, supra,* 26 Cal.4th at p. 134 [in assessing chain of custody claim, court should consider "ease or difficulty with which the particular evidence could have been altered"].) Law enforcement or some other hypothetical interested party would have had to affirmatively fabricate the images that appeared on the video. There is no evidence suggesting any such fabrication occurred here.

Second, Williams has never claimed the video was in fact altered in any way. Instead, his chain of custody claim essentially asserts that the prosecution failed to negate the possibility that alteration might have occurred. When a party asserting a chain of custody objection has provided no suggestion of tampering beyond bare speculation, any shortcomings in the chain of custody generally go to the weight of the evidence, not its admissibility. (*Catlin, supra,* 26 Cal.4th at p. 134; *Hall*, *supra*, 187 Cal.App.4th at

10

p. 294; *People v. Lewis* (1987) 191 Cal.App.3d 1288, 1299 [prosecution was not required to "'negate all possibility of tampering' . . . . Appellant having raised the barest speculation that there was tampering with . . . the original exhibits, it was proper for the trial court "'to admit the evidence and let what doubt remain [ed] go to its weight. [Citations.]"' [Citation.]"].)

Third, as explained above, officers Anzora and Hayashi both testified that the video accurately portrayed what occurred after they had arrived on scene, suggesting that at least a portion of the video was accurate. Moreover, Hayashi testified the clothes Williams and Washington were wearing in the video matched the clothing they were wearing when they were detained a short time later, providing further evidence that the images in the video were not altered or fabricated. (*Cf. People v. Wallace* (2008) 44 Cal.4th 1032, 1061 [officer's statement that socks matched those he obtained at scene of crime sufficient to overcome gaps in chain of custody].)

Finally, the prosecution provided evidence explaining the source of the video. Specifically, the Main Spot's manager testified that the dispensary's surveillance system recorded live images of the area that was depicted in the video, and that images were transferred onto a DVR located inside the store. Thus, there was evidence demonstrating the likely origin of the video.

Given the circumstances described above, including the specific nature of the evidence at issue, the lack of any actual allegation of tampering and testimony indicating at least a portion of the video was accurate, the trial court did not abuse its discretion in concluding the prosecution demonstrated it was reasonably certain the video had not been altered. (*Catlin, supra*, 26 Cal.4th at p. 134 [party offering the evidence must show that, "taking all the circumstances into account, . . . it is reasonably certain that there was no alteration"].)

11

### B. *Williams Has Forfeited His Objection to Hayashi's Identification Testimony*

Williams also argues that "apart from the erroneous introduction of the entire surveillance video," the trial court "further erred in permitting Officer Hayashi to identify Williams . . . on the portion of the videotape before Hayashi arrived on the scene." At trial, Hayashi identified Williams as the person who was shown on the video crouching near the security door, and later seen holding a drill saw. Williams contends prior case law has established that "lay opinion testimony concerning the identify of an [individual] portrayed in a surveillance camera photo . . . is admissible [only if] the witness has personal knowledge of the defendant's appearance at or before the time the photo was taken." Williams further contends that, applying the applicable standard here, Hayashi's identification testimony was not supported by sufficient "personal knowledge" because his first encounter with the defendant occurred after the images were recorded, rather than "at or before" the time of the recording.

The People argue Williams has forfeited this argument by failing to object to Hayashi's identification testimony at trial. Although Williams does not dispute he never specifically objected to Hayashi's identification testimony, he argues that his objection to the "introduction . . . of the entire [surveillance] video . . . necessarily include[d] an objection to Hayashi testifying about any portion of it, including his identification of Williams from the video . . ."

"Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.' Pursuant to this statute, '"[our Supreme Court] ha[s] consistently held that the 'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable."' [Citation.]" (*People v. Demetrulias* (2006) 39 Cal.4th 1, 21.) "'[T]he objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility.' [Citation.] What is important is that the objection fairly inform the trial court, as well as the party

12

offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling." (*People v. Partida* (2005) 37 Cal.4th 428, 434-435).

Williams's foundational objections to the surveillance video were not sufficient to alert the court or the prosecution that he also believed Hayashi lacked the personal knowledge necessary to identify the persons shown on the video. The foundational objections, which pertained to the admissibility of the video itself, involved an entirely different category of evidence than Hayashi's identification testimony, which related to his ability to recognize the person shown in the video. Under section 353, subdivision (a), Williams has forfeited any challenge to Hayashi's identification testimony.

**DISPOSITION**

The judgment is affirmed.


ZELON, Acting P. J.



We concur:



SEGAL, J.



BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.